281 N.J. Super. 476 (1995)
658 A.2d 732
HARRY M. FOX, PLAINTIFF-APPELLANT,
v.
MERCEDES-BENZ CREDIT CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 5, 1995.
Decided May 22, 1995.
*477 Before Judges KING, MUIR, Jr., and BILDER.
John F. Darcy argued the cause for appellant (Orbe, Nugent and Darcy, attorneys; Mr. Darcy, on the brief).
Kathleen Cavanaugh argued the cause for respondent (Baron, Gallagher, Hertzberg & Perzley, attorneys; Jerome F. Gallagher, Jr., and Ms. Cavanaugh, on the brief).
The opinion of the Court was delivered by MUIR, Jr., J.A.D.
The complaint in this case alleges a cause of action for concealment of evidence. See Viviano v. CBS, Inc., 251 N.J. Super. 113, 597 A.2d 543 (App.Div. 1991), certif. denied, 127 N.J. 565, 606 A.2d 375 (1992). The factual predicate for the complaint is the belated production of evidence during pretrial discovery in a deficiency action defendant, Mercedes-Benz Credit Corporation (MBCC), brought under the Uniform Commercial Code (UCC) as a secured creditor after resale of collateral. The trial court granted summary judgment dismissing the complaint and at the same time denied Fox's motion to amend his complaint to include counts for fraud and consumer fraud (N.J.S.A. 56:8-2). Plaintiff appeals. We affirm.

*478 I.

Events that transpired in discovery are the marrow of this appeal. Yet, that marrow cannot be properly comprehended without the inclusion of certain skeletal aspects of events that began with the underlying UCC transaction. In providing the skeleton, we rely on the record presented on this appeal and the records of two prior appeals in the deficiency action. The first appeal resulted in a reversal; the second, an affirmance of the judgment from the remand trial.
During a period from late July through August 1984, Fox, as a principal of a closely held corporation, Sherman Leasing, Inc., negotiated the latter's purchase of five cab-over diesel Freightliner Tractors (trucks) from Glasofer Motors. (Other trucks were purchased but only five are relevant here.) Fox gave a personal guarantee to satisfy any and all indebtedness existing, accrued to, or owing by Sherman Leasing. Glasofer Motors assigned the retail installment contracts to MBCC.
In January 1986 default on payment terms led to a revision of the installment contracts signed by Fox. The revisions basically rescheduled monthly payments. No payments were made under the revised agreements.
That default led to MBCC's demand for repossession for purposes of sale of the trucks. As Judge Stark in her opinion following the remand trial noted:
Fox described in detail the preliminary contacts leading to [MBCC's] repossession.... [T]hroughout February, March and April of 1986 there were frequent contacts between [MBCC] and [employees under Fox's control] notifying him of [MBCC's] demand for immediate payment, and an untenable second default situation; namely, that after ... the 1984 contract was revised to avoid forfeiture, ... Fox signed[,] in 1986[,] writings that indicated there would be a revision as to the payoff of these in light of the default ... and ... that  the only way to forestall the repossession that was included in the original contract and the consequences of same ... a resale, was to pay ... in accordance with the revised [agreement]....
....
Mr. Fox ... acknowledges his awareness of all details of these conversations ... after stalling [MBCC] with promises of payment.

*479 Now, Fox agreed to and [did] ultimately surrender the vehicles to [MBCC's] agent at [Fox's] ... Passaic address [on September 5, 1986].
On September 9, 1986, as required by the UCC, see N.J.S.A. 12A:9-105, MBCC mailed written notice of a proposed private sale at Glasofer Mack in Edison, New Jersey, addressed to Fox at two addresses: 145 Dayton Avenue, Passaic, and 149 Lincoln Avenue, Hackensack. Notices of sale were also sent to Sherman Leasing at Oak Creek, Wisconsin. The notice set November 8, 1986, as the sale date. MBCC did not sell the trucks until February 22, 1989, when Camden Truck Parts bought them at about $3,800 per truck on "as is" terms. The sale did not take place at Glasofer. Thereafter, MBCC commenced the deficiency action.
When issue joined, discovery ensued. The extent of discovery is not defined. Fox did serve interrogatories. While we are not provided with copies of the interrogatories, certain answers to them shed pertinent light:
15.(d) A copy of all documents which contain, refer or relate to all notices delivered to defendants regarding the sale and/or disposition of the vehicles and defendants' rights to place a bid and reacquire possession of the vehicles is attached hereto.
18. A copy of all documents which contain[,] refer or relate to Plaintiff's demands for reimbursement from defendants for the $148,250.97 principal deficiency resulting from the resale by plaintiff of the vehicles is attached hereto.
One trial judge granted summary judgment on liability. After a proof hearing on the deficiency, another trial judge entered a $140,185.71 judgment against Fox.[1] We reversed and remanded for a new trial on the contested issues of the actual receipt of notices of sale by Fox and the commercial reasonableness of the collateral sale. The documents MBCC provided in response to interrogatory 15(d) in discovery served as the basis for our ruling that the record created an issue of facts as to whether Fox received actual notice. Fox disputed receipt.
*480 By consent, the parties conducted additional discovery prior to the remand trial. Pursuant to that discovery, MBCC provided documentation in addition to that previously supplied. The complaint in this action ensued. Prior to its filing, Judge Murphy denied Fox's motion to amend his answer in the deficiency action to include a counterclaim for concealment of evidence. See Viviano v. CBS, Inc., supra, 251 N.J. Super. at 128, 597 A.2d 543 (refusing to apply entire controversy doctrine to bar component claim unknown at time of filing of original complaint); but see Brown v. Brown, 208 N.J. Super. 372, 506 A.2d 29 (App.Div. 1986) (applying entire controversy doctrine to constituent claims arising during the pendency of litigation). There is no entire controversy doctrine issue raised.
We are not apprised of the entire scope of the belatedly provided discovery. Fox's brief characterizes it as "some six hundred pages of business records." Whether this is a paroxysm of advocacy, we cannot ascertain.
Fox highlights four documents belatedly provided which he relies upon to establish the opprobriousness of the concealment. The four documents bear on pre-sale conduct of an MBCC employee named Meagher. Essentially, Judge Stark found Meagher effete in his handling of the sale. That effeteness led to a finding the sale had not been conducted in a commercially reasonable manner. See Security Sav. Bank v. Tranchitella, 249 N.J. Super. 234, 241, 592 A.2d 284 (App.Div. 1991). But Judge Stark's opinion does not disclose those documents did any more than reflect the mishandling of the sale. Thus, the documents do not fit the character of conduct underlying the Viviano claim.
The belatedly provided discovery also was not concealed in a manner similar to the concealment in Viviano where plaintiff discovered the evidence by her own means rather than through a turnover in discovery. MBCC provided the documents in the supplemental discovery. Fox could not have discovered the documents without MBCC's voluntary disclosure, a point conceded in *481 the complaint filed in this action. That turnover gave Fox full use of all the documents at the deficiency action remand trial.
That full use in part led to a substantial reduction of the amount of deficiency. Judge Stark found a deficiency that resulted in a judgment of $69,863.33, down from the $140,185.71 of the first judgment. We affirmed the remand trial judgment on appeal.
Judge Boggia granted MBCC's motion for summary judgment on July 6, 1993. The judge reasoned Viviano v. CBS, Inc., supra, was inapplicable "[i]n this instance [because] the new evidence had no bearing on the outcome of the second action. Viviano does not extend itself to cases where the new evidence fails to effect the outcome of the second action." Combining that reasoning with other conclusions not relevant to our decision, the trial court held defendant was entitled to summary judgment. This appeal followed.

II.
Fox first asserts Judge Boggia erred in his findings of fact when he granted summary judgment. While the judge may have mistakenly set forth certain historical facts, they do not bear on the substantive nature of the appeal. Accordingly, we reject them as grounds for resolution of the appeal.

III.
This court in Viviano v. CBS, Inc., supra, recognized the tort of intentional concealment of evidence as a separate cause of action. We used as the tort's cornerstones a cause of action for fraudulent concealment in the sale of real estate, see State, Dep't of Environ. Protection v. Ventron Corp., 94 N.J. 473, 503, 468 A.2d 150 (1983), and a cause of action for spoliation of evidence. See Hazen v. Municipality of Anchorage, 718 P.2d 456 (Alaska 1986); Velasco v. Commercial Bldg. Maintenance Co., 169 Cal. App.3d 874, 215 Cal. Rptr. 504 (1985); Smith v. Superior Court for Cty. of Los Angeles, 151 Cal. App.3d 491, 198 Cal. Rptr. 829 (1984); Pati Jo Pofahl, Smith v. Superior Court: A New Tort of Intentional *482 Spoliation of Evidence, 69 Minn.L.Rev. 961 (1985); Maurice L. Kervin, Spoliation of Evidence: Why Mississippi Should Adopt the Tort, 63 Miss.L.J. 227 (1993). To state a claim for intentional concealment of evidence, we ruled plaintiff must establish that defendant was legally obligated to disclose the subject records, that they were material to a personal injury case, that plaintiff could not have readily learned of it without defendant's disclosure (which defendant did not do), that defendants intentionally failed to disclose it to plaintiff, and that plaintiff was harmed by relying on the nondisclosure. Viviano v. CBS, Inc., supra, 251 N.J. Super. at 123, 597 A.2d 543.
In Viviano we identified the concealment tort as an analogue of the tort of spoliation of evidence. The spoliation tort developed from instances where a person intentionally interfered with a plaintiff's prospective civil claim. See Hazen v. Municipality of Anchorage, supra (where spoliators were defendants in plaintiff's civil action for false arrest and malicious prosecution and they allegedly altered tapes plaintiff relied upon to prove those claims); Velasco v. Commercial Bldg. Maintenance Co., supra (where alleged spoliator was not a party to a products liability civil litigation but destroyed evidence of the claim); Smith v. Superior Court for Cty. of Los Angeles, supra (where alleged spoliator was a potential defendant which agreed to preserve the physical evidence that served as a basis for plaintiff's products liability claim).
Both the spoliation and concealment torts are designed to remediate tortious interference with a prospective economic advantage. See Viviano v. CBS, Inc., supra, 251 N.J. Super. at 128, 597 A.2d 543; Smith v. Superior Court for Cty. of Los Angeles, supra, 198 Cal. Rptr. at 836-37; see generally Printing Mart v. Sharp Elec. Corp., 116 N.J. 739, 751, 563 A.2d 31 (1989). The prospective economic advantage being protected is a plaintiff's opportunity to bring a cause of action for which damages may be awarded. See Viviano v. CBS, Inc., supra, 251 N.J. Super. at 126, 597 A.2d 543; Hazen v. Municipality of Anchorage, supra, 718 *483 P.2d at 464; Hirsch v. General Motors Corp., 266 N.J. Super. 222, 245, 628 A.2d 1108 (Law Div. 1993).
The concealment tort then is directed only at protecting prospective claims of plaintiffs. See Viviano v. CBS, Inc., supra, 251 N.J. Super. at 126, 597 A.2d 543. It is inapplicable to defendant's ability to defend a lawsuit. See Hirsch v. General Motors Corp., supra, 266 N.J. Super. at 245, 628 A.2d 1108. When plaintiffs have concealed evidence causing interference with discovery, the rules of court provide more than sufficient remedy. See Abtrax Pharmaceuticals, Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 511-513, 655 A.2d 1368 (1995) (plaintiff's concealment of material evidence until mid-trial justified dismissal of complaint with prejudice).
Consequently, even if Fox's allegations are deemed true, allegations we doubt a reasonable jury could reach, he fails to state a cause of action for which relief can be granted. See R. 4:6-2(e). Fox's concealment claim relates only to his ability to defend MBCC's claim. Defense of a claim is not cognizable under the tort of evidence concealment. As such, it was properly dismissed on motion for summary judgment. See Pressler, Current N.J. Court Rules, comment 2 on R. 4:6-2 (1995).

IV.
Fox also finds error in the trial judge's denial of his application to amend the complaint to add counts for fraud and consumer fraud. We find the contention to be clearly without merit. R. 2:11-3(e)(1)(E).
To begin with, pleading amendments are addressed to the sound discretion of the trial judge. Where a proposed claim is "marginal at best," that discretion is not abused in denial of a motion to amend. Stuchin v. Kasirer, 237 N.J. Super. 604, 609, 568 A.2d 907 (App.Div. 1990), certif. denied, 121 N.J. 660, 583 A.2d 346 (1991).
Plaintiff's proposed amendments lack even marginality. Consumer fraud protects a consumer from unscrupulous merchandising. *484 See Neveroski v. Blair, 141 N.J. Super. 365, 379, 358 A.2d 473 (App.Div. 1976). As the recited facts note, unscrupulous merchandising is not a viable issue.
Fraud requires clear and convincing proof. Stochastic Decisions, Inc. v. DiDomenico, 236 N.J. Super. 388, 395, 565 A.2d 1133 (1989), certif. denied, 121 N.J. 607, 583 A.2d 309 (1990). The fraud here relates to the intentional aspect of withholding discovery. Fox as much as concedes the insufficiency of his proofs when he identifies the grounds for his claim of intentional concealment on "the inference" that can be drawn from the initial withholding of discovery and the uncontested complaint statement that he could not have discovered the other documents without MBCC's disclosure of them. The former projects that only an inference supports his "intentional" nondisclosure claim. The latter demonstrates a clear inference upon which reasonable minds cannot differ that MBCC voluntarily turned over the belated discovery. Simply put, that is not clear and convincing proof of fraud.
Consequently, we find no abuse of discretion in the denial of Fox's motion to amend.
Affirmed.
NOTES
[1] Although irrelevant to this appeal, MBCC secured judgments against other defendants.