**Bruce LARISON, Plaintiff,**

v.

**The CITY OF TRENTON,
et al., Defendants.**

**No. CIV. A. 95–5907 AET.**

United States District Court,
D. New Jersey.

May 5, 1998.

262

Patrick J. Whalen, Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, NJ, for Plaintiff.

George Wilgus, III, Lenox, Socey, Wilgus, Formidoni & Casey, Trenton, NJ, for Defendants.

### MEMORANDUM

WOLFSON, United States Magistrate Judge.

Presently before the Court is the motion by plaintiff, Bruce Larison, seeking leave to file a Fourth Amended Complaint to add two new claims, one for spoliation of evidence in connection with the destruction of Detention Unit videotapes and other documentation related to his detention, and the other, a due process claim, based upon unreasonable delay in scheduling his first court appearance following his arrest. The Court has reviewed the moving and opposition papers, and the reply submissions of both parties, and considers this motion pursuant to *Fed. R.Civ.P.* 78. For the following reasons, plaintiff's motion to file a Fourth Amended Complaint is granted in part and denied in part.

### Background

Mr. Larison originally filed this civil rights action on November 17, 1995, alleging that he had been subjected to an unlawful arrest and use of excessive force by officers of the Trenton Police Department on or about May 5, 1994. In addition to an incident during which plaintiff alleges he was forcibly controlled by five police officers while in detention, plaintiff asserts that he suffered damage to his wrists as the result of being handcuffed for over fifteen hours. Plaintiff's Submission dated March 21, 1998, pp. 5–6. Discovery has proceeded slowly, necessitating the Court's intervention on a number of occasions, and the complaint has undergone several amendments to add various parties and claims.

On January 14, 1998, plaintiff's counsel received copies of the Trenton Police Department Detention Unit Regulations ("Regulations") from defendants. Certification of Patrick J. Whalen, Esq. (hereinafter "*Whalen Cert.*") at ¶ 3. Based upon a review of these Regulations, plaintiff asserts that certain Detention Unit videotapes and documentation [1] relevant to his case were destroyed in

---

1. The videotapes and documentation to which plaintiff refers are generated in accordance with the Regulations, contained in Memorandum Order 12–92, which sets forth the standard operating procedure to be utilized in connection with the videotape surveillance of the Detention Unit. Plaintiff's Submission of January 27, 1998, Exhibit A, Memorandum Order # 12–92. This procedure mandates that all cells as well as other designated areas are to be monitored by video surveillance and the monitoring shall be recorded on videotape. *Id.* at pp. 1, 4. In addition, it states that the videotapes created as a result of such monitoring are to be preserved for a period of thirty to sixty days prior to being recycled, unless designated for preservation. *Id.* at p. 3. Videotapes which are likely to have recorded an incident should be flagged for preservation. *Id.* at p. 1. Further, Memorandum Order # 7–94 establishes reporting requirements whenever a prisoner is injured during a physical confrontation or whenever pepper gas is utilized to subdue an unruly prisoner. Plaintiff's Submission of January 27, 1998, Exhibit D, Memorandum Order # 7–94. Plaintiff alleges that both factors

violation of the Trenton Police Department's own Regulations. *Whalen Cert.* at ¶ 4–5. In addition, plaintiff asserts that the discovery provided by defendants, in conjunction with information obtained from the Municipal Court, has revealed that plaintiff experienced an "unreasonable delay" in securing his first appearance before a Municipal Court Judge. *Whalen Cert.* at ¶ 4. As such, plaintiff's counsel now moves to file a Fourth Amended Complaint in order to assert claims for: 1) negligent and intentional spoliation of evidence; and, 2) "unreasonable delay" in bringing Mr. Larison before a Trenton Municipal Court Judge. Plaintiff asserts that any delay in bringing these claims is due to defendants' having failed to produce the Detention Unit Regulations and other requested documentation until January 1998, despite document production requests made more than a year ago, on October 25, 1996 and December 10, 1996. *Whalen Cert.* at ¶¶ 3, 6.

Defendants object to plaintiff's motion, asserting that: 1) no New Jersey Appellate Division cases have recognized the tort of negligent spoliation of evidence; 2) plaintiff will be unable to establish the necessary elements to succeed on a claim for intentional spoliation of evidence, since plaintiff failed to timely notify the police department of his desire to preserve the tapes and plaintiff has failed to allege facts sufficient to establish that the tapes or other documentation were destroyed in "bad faith"; and, 3) the claim for unreasonable delay in gaining a court appearance should not be permitted because Trenton Police Department cell records indicate that plaintiff was arrested at approximately 10:45 p.m. on May 5, 1994, and was taken to court the next morning, May 6, 1994, from 9:30 a.m. until noon. Defendants recognize that the Director of the Trenton Municipal Court indicates that plaintiff was brought before the court for the first time on May 7, 1994, but defendants assert that the fact that a conflict exists in the records does not warrant plaintiff being permitted to assert an independent cause of action. Opposition Brief at 9–10.

were extant here. Finally, the Regulations mandate that private reports be submitted by the Detention Lieutenant, notations be made on the Detention Unit Highlight Sheet, and, that the

*Discussion*

■ Federal Rule of Civil Procedure 15(a) codifies a liberal approach to the amendment of pleadings to promote the goal of deciding cases on the merits instead of disposing of them on technicalities. *See* CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1471, at 502–507 (1990). Rule 15(a) provides, in pertinent part, that:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served .... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

While courts have broad discretion to decide motions for leave to amend the pleadings, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court has observed that courts are to heed Rule 15(a)'s mandate that amendments are to be granted "freely" in the interests of justice. *Foman*, 371 U.S. at 182, 83 S.Ct. 227. The grounds upon which a court may deny a motion to amend include unfair prejudice, futility, and undue delay. *Id.; see also Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982).

■ Here, the defendants argue solely that the amendments are futile. A futile amendment is one which would not withstand a motion to dismiss. *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). Hence, if the amendment is "frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend. If a proposed amendment is not clearly futile,

private reports and a Police Incident Report by any officers involved in the incident, be submitted. *Id.*

then denial of leave to amend is improper." WRIGHT et al., *supra* § 1487, at 637–42. In other words, the applicable standard to determine futility is whether the amendment is "sufficiently well-grounded in fact or law" to demonstrate "that it is not a frivolous pursuit." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990). The court will address the claim of futility separately in connection with each proposed cause of action.

### A. Negligent/Intentional Spoliation of Evidence

#### 1. Intentional Spoliation of Evidence

In *Smith v. Superior Court*, 151 Cal. App.3d 491, 198 Cal.Rptr. 829 (1984), California first recognized the novel tort of "spoliation of evidence." In that case, plaintiff, who was injured when a wheel flew off a van and crashed into the windshield of the plaintiff's car, was permitted to assert a cause of action for spoliation of evidence against the car dealer which had customized the van with "mag" wheels, and which had reneged on its promise to plaintiff's counsel to maintain the left rear tire and other relevant parts of the van. *Id.* 198 Cal.Rptr. at 832, 837. Thus, was spawned a new cause of action which has received limited acceptance in other jurisdictions. See, *Holmes v. Amerex Rent–A–Car*, 710 A.2d 846 (D.C.App.1998) (certifying answer that District of Columbia recognizes negligent spoliation of evidence tort); *Coleman v. Eddy Potash, Inc.*, 120 N.M. 645, 905 P.2d 185 (1995) (New Mexico recognizing tort for intentional spoliation of evidence); *Smith v. Howard Johnson Co.*, 67 Ohio St.3d 28, 615 N.E.2d 1037 (1993) (certifying answers that Ohio would recognize negligent and intentional spoliation claims); *Hazen v. Municipality of Anchorage*, 718 P.2d 456 (Alaska 1986) (Alaska recognizing intentional spoliation tort where defendant altered tapes); *Bondu v. Gurvich*, 473 So.2d 1307 (Fla.App. 3 Dist., 1984) (Florida recognizing a negligent spoliation tort where hospital had a duty pursuant to administrative regulation to maintain medical records). Conversely, the courts of a number of states have refused to recognize a tort for spoliation. See, *Elias v. Lancaster General Hosp.*, 710 A.2d 65 (Pa.Super.1998); *Monsanto Co. v. Reed*, 950 S.W.2d 811 (Ky.1997); *Beers v. Bayliner Marine Corp.*, 236 Conn. 769, 675 A.2d 829 (1996); *Henderson v. Tyrrell*, 80 Wash.App. 592, 910 P.2d 522 (Wash.App.1996); *Boyd v. Travelers Ins. Co.*, 166 Ill.2d 188, 209 Ill.Dec. 727, 652 N.E.2d 267 (1995); *Weigl v. Quincy Specialties Co.*, 158 Misc.2d 753, 601 N.Y.S.2d 774 (N.Y.Sup.Ct.1993); *Murphy v. Target Products*, 580 N.E.2d 687 (Ind.Ct. App.1992); *Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc.*, 456 N.W.2d 434 (Minn.1990) (declined to recognize tort of spoliation of evidence in certified question but noted that instant facts were not conducive to recognition of spoliation tort); *Gardner v. Blackston*, 185 Ga.App. 754, 365 S.E.2d 545 (1988); *Koplin v. Rosel Well Perforators, Inc.*, 241 Kan. 206, 734 P.2d 1177 (1987); *La Raia v. Superior Court*, 150 Ariz. 118, 722 P.2d 286 (1986); *Miller v. Montgomery County*, 64 Md.App. 202, 494 A.2d 761 (Md.App.1985). In addition, other courts have declined to decide whether they would recognize a tort for spoliation of evidence, finding that the cases in which the question was presented were not conducive to such a determination. See, *Yoakum v. Hartford Fire Ins. Co.*, 129 Idaho 171, 923 P.2d 416 (1996); *Rodriguez v. Webb*, 141 N.H. 177, 680 A.2d 604 (1996); *Harrison v. Davis*, 197 W.Va. 651, 478 S.E.2d 104 (W.Va. 1996); *Peek v. State Auto Mutual Ins. Co.*, 661 So.2d 737 (Ala.1995); *Ely v. St. Luke's Hosp.*, 182 Wis.2d 510, 514 N.W.2d 878, (disposition only, unpublished opinion), 1994 WL 24352 (Wis.App. Feb. 1, 1994); *Panich v. Iron Wood Prod. Corp.*, 179 Mich.App. 136, 445 N.W.2d 795 (Mich.App.1989). Finally, there is a split of opinion among the lower courts of Louisiana and Texas, as to whether recognition of a spoliation tort is appropriate. See, e.g., *Bethea v. Modern Biomedical Svcs., Inc.*, 704 So.2d 1227 (La.App. 3 Cir.1997) (recognizing spoliation tort but noting that other Louisiana courts had declined to recognize tort based on a general duty to preserve evidence); *Malone v. Foster*, 956 S.W.2d 573 (Tex.App.–Dallas 1997)(holding Texas does not recognize intentional spoliation tort); *Ortega v. Trevino*, 938 S.W.2d 219 (Tex. App.–Corpus Christie 1997) (determining Texas should recognize spoliation tort);

*Brewer v. Dowling,* 862 S.W.2d 156, 160 n. 5 (Tex.App.-Fort Worth 1993) (noting Texas does not recognize a separate cause of action for spoliation of evidence).

However, even the creator of this cause of action, the California courts, has noted that this inventive tort may be rife with uncertainty. In *Youst v. Longo,* 43 Cal.3d 64, 233 Cal.Rptr. 294, 729 P.2d 728 (1987), the California Supreme Court, in discussing the spoliation of evidence tort adopted in *Smith,* as well as another variation of the interference with prospective economic advantage tort adopted in the context of elections in *Gold v. Los Angeles Democratic League,* 49 Cal. App.3d 365, 122 Cal.Rptr. 732 (1975), noted that "[next] to *Gold, Smith* may represent the most speculative advantage that has heretofore been recognized by the California appellate courts." *Youst* 43 Cal.3d at 73–74, 233 Cal.Rptr. 294, 729 P.2d 728.

Nonetheless, following California's lead in *Smith,* the New Jersey Appellate Division has recognized a tort of fraudulent concealment of evidence, which it has noted is analogous to California's "spoliation of evidence" tort. *Viviano v. CBS, Inc.,* 251 N.J.Super. 113, 125–26, 597 A.2d 543 (App.Div.1991). In *Viviano,* the Court held, that an employer, who had deliberately concealed a memorandum which contained information relevant to plaintiff's suit for on-the-job personal injuries against a manufacturer of the injury-causing equipment, could be held liable for damages. *Id.* at 117, 597 A.2d 543. The elements of the fraudulent concealment of evidence tort are as follows:

(1) pending or probable litigation involving the plaintiff; (2) knowledge on the part of the defendant that litigation exists or is probable; (3) willful or, possibly negligent destruction of evidence by the defendant designed to disrupt the plaintiff's case; (4)

disruption of the plaintiff's case; and (5) damages proximately caused by the defendant's acts.

*Viviano,* 251 N.J.Super. at 126, 597 A.2d 543 (citations omitted).

At the outset, this court notes that the existence of an affirmative cause of action for spoliation of evidence is a matter of state law. As such, this court must be guided by the decisions of New Jersey's highest court. *Gares v. Willingboro Township,* 90 F.3d 720, 725 (3d Cir.1996). Although several Appellate Division cases have recognized the affirmative cause of action for fraudulent concealment of evidence established in *Viviano* [2], there is no New Jersey Supreme Court case which has considered this newly recognized tort. Nor do the few cases considered by the federal courts in the District of New Jersey offer much guidance. *See, Trump Taj Mahal v. Costruzioni Aeronautiche Giovanni,* 761 F.Supp. 1143 (D.N.J.1991) (declining to adopt the tort of intentional spoliation prior to adoption by the New Jersey state courts); *PBA Local No. 38 v. Woodbridge Police Dep't,* 832 F.Supp. 808 (D.N.J.1993) (noting that it is not entirely clear that New Jersey recognizes the tort of spoliation of evidence, but assuming it does, in the limited context of ruling on motion to amend to add a claim for spoliation of evidence).

Since New Jersey's highest court has not considered this matter, this court must base its decision on a prediction of how the New Jersey Supreme Court would proceed. *See, Pittston Co. Ultramar America Ltd. v. Allianz Ins. Co.,* 124 F.3d 508, 516 (3d Cir. 1997); *see also, City of Erie v. Guaranty National Ins. Co.,* 109 F.3d 156, 159–60 (3d Cir.1997) (where Pennsylvania had not yet decided when the tort of malicious prosecution occurs for purposes of insurance coverage, federal court would predict what the

---

**2.** The New Jersey Superior Court, Appellate Division, in *Allis–Chalmers Corporation Product Liability Trust v. Liberty Mutual Insurance Company* acknowledged that New Jersey courts recognize the tort of fraudulent concealment of evidence, although in that case the requisite intent was absent. 305 N.J.Super. 550, 556, 702 A.2d 1336 (App.Div.1997). Similarly, the Appellate Division in *Fox v. Mercedes–Benz Credit Corporation* acknowledged the existence of the cause of action, intentional concealment of evidence, but

found it inapplicable where plaintiff was the alleged spoliator. 281 N.J.Super. 476, 482–83, 658 A.2d 732 (App.Div.1995). *But see, Marinelli v. Mitts & Merrill,* 303 N.J.Super. 61, 74–75, 696 A.2d 55 (App.Div.1997) (finding that although the *Viviano* court recognized a fraudulent concealment tort, it "never specifically adopted an independent cause of action for the intentional spoliation of evidence ..." and finding issue moot as plaintiffs were not damaged by destruction of evidence).

Pennsylvania Supreme Court would decide if confronted with the question). This court is not convinced that the New Jersey Supreme Court would adopt intentional spoliation of evidence as an affirmative cause of action based on some very practical considerations; there are inherent flaws in the application of this affirmative cause of action. Initially, the elements of the prima facie case cannot be established unless and until the plaintiff has failed to prove his case without the missing evidence. If plaintiff prevails on his underlying cause of action, there are no damages resulting from the destruction of the evidence. On the other hand, if plaintiff is unsuccessful in his case, the claim of spoliation must go forward. This appears to necessitate a bifurcated trial which will result in prolonging the period before a case is finally resolved.[3] If the plaintiff does not succeed on the merits and the trial of a spoliation claim becomes necessary, plaintiff must establish that his inability to prove his case resulted from the destruction of evidence, and not some other inherent weakness in plaintiff's case. Further, this difficulty in proving causation may be enhanced by the fact that the spoliated evidence may never have been viewed by plaintiff. Finally, plaintiff must establish his damages, or, the amount plaintiff would have recovered in the event plaintiff had prevailed. In sum, in this court's opinion, the cause of action is unwieldy and largely unworkable unless the courts are willing to engage in speculation and conjecture. Therefore, the more appropriate and practical remedy is continuing the practice of imposing sanctions against a spoliator and utilizing jury instructions, which have been the methods favored by the federal courts[4] and the New Jersey courts in the past.[5] This court agrees with the Supreme Court of Kentucky, which noted the wisdom of continuing the practice of "[t]he vast majority of jurisdictions [which] have chosen to counteract a party's deliberate destruction of evidence with jury instructions and civil penalties." *Monsanto Company v. Reed*, 950 S.W.2d at 815.

■ Despite this court's skepticism of the advisability of an independent cause of action for spoliation of evidence, and whether the New Jersey Supreme Court would adopt such a new tort, it is unnecessary for the court to decide this issue, since the plaintiff has failed to allege facts sufficient to establish a prima facie case, utilizing the *Viviano* elements.

Here, plaintiff alleges that the defendants intentionally destroyed the videotapes of his detention following his arrest. It is undisputed that plaintiff was videotaped in his jail cell and, possibly, while present at various other locations in the Detention Unit, as part of the routine surveillance of prisoners who are incarcerated. Furthermore, according to plaintiff, a serious incident in the form of a fight and prolonged handcuffing occurred, and, documentation required to be generated upon the occurrence of serious incidents was destroyed or concealed. Plaintiff has submitted photographs taken after his release of

---

**3.** See the strident dissent by Chief Judge Schwartz of the Florida Supreme Court in *Bondu, supra,* wherein he noted,

> [U]pon reconsideration ... I am persuaded that the tort created by the majority opinion ... should not be recognized. In my view, such a rule runs counter to the basic principle that there is no cognizable independent action for perjury, or for any improper conduct even by a witness, much less by a party, in an existing lawsuit. (citations omitted). Were the rule otherwise, every case would be subject to constant retrials in the guise of independent actions. Thus, what the court characterizes at page seven of its opinion as an 'a fortiori' situation is instead a complete non-sequitur. *Id.* at 1313.

**4.** "[T]here is also authority suggesting that the possible preclusion of evidence in cases [involving the destruction of evidence] ... is governed by federal law as part of the inherent power of a district court to sanction parties." *Schmid v. Milwaukee Electric Tool Corp.,* 13 F.3d 76, 78 (3d Cir.1994). "[C]ourts have admitted evidence tending to show that a party destroyed evidence relevant to the dispute being litigated. (citations omitted). Such evidence permitted an inference, the 'spoliation inference,' that the destroyed evidence would have been unfavorable to the position of the offending party." *Id.*

**5.** Besides the recently recognized spoliation tort, New Jersey appellate courts have endorsed the use of the spoliation inference and civil discovery sanctions as appropriate remedies for the destruction, or loss, of evidence. *See, Hirsch v. General Motors Corp.,* 266 N.J.Super. 222, 256, 628 A.2d 1108 (Law Div.1993).

the bruises on his wrists, and has proffered a report completed by Officer Nicholson, describing a "vicious fight" which took place between plaintiff and several officers and detailing Officer Nicholson's use of pepper spray to subdue the plaintiff, but notes that the appropriate documentation was either never prepared or destroyed.

Defendants assert that the videotapes of the Detention Unit are routinely taped over every thirty to sixty days, absent the occurrence of a serious incident. Only in the event of such an occurrence, do Detention Unit Regulations require that Detention Unit personnel flag tapes for preservation beyond the thirty to sixty day period. In this case, defendants dispute that a serious incident occurred while plaintiff was in an area which was subject to video surveillance.

Plaintiff maintains, however, that defendants intentionally failed to preserve the videotapes of this serious incident, in direct contravention of Detention Unit Regulations. Plaintiff further asserts, that the destruction of these tapes creates an inference that the videotapes would have revealed evidence which would be damaging to the defendants and, thus, was destroyed in bad faith. Using these facts, the court will analyze whether plaintiff has alleged a prima facie claim for intentional spoliation.

Plaintiff has failed to allege facts sufficient to establish the first two elements of the cause of action, that, at the time of the destruction of the tapes and materials there was pending or probable litigation involving the plaintiff, and knowledge on the part of the defendants that litigation existed or was probable. As defendants have pointed out, plaintiff was arrested in May of 1994 and did not initiate this suit until November of 1995. For purposes of this analysis, the court will accept as true that defendants neglected to follow their own internal regulations by failing to preserve the videotapes beyond the thirty to sixty day period, although it is less than obvious from the testimony of the parties involved that an incident requiring preservation of the tape did occur in an area which was subject to videotape surveillance.[6] However, accepting plaintiff's assertions that an incident of a serious nature occurred while the plaintiff was in his cell, the City of Trenton's failure to adhere to its own regulations by failing to preserve the videotapes beyond the thirty to sixty day period after which they would normally be recycled, occurred well in advance of plaintiff having instituted the instant suit. Further, whether the videotapes may have revealed that plaintiff, in fact, had grounds for a lawsuit is, at this juncture, mere speculation. Simply, there is not sufficient indication that defendants were

---

6. Trenton Police Department's Memorandum Order # 12-92 requires "If during a tour of duty, it is likely ⸏at the recording video tape recorded an incid⸍ , such as ... the forcible control of a disruptiv prisoner, the Unit Commander will ... [request] that the tape be observed and preserved ...." Memorandum Order # 12-92, Page 1, Plaintiff's Exhibit A. There is no indication, however, that the video tape recorded an incident. The court notes that Officer Nicholson's report indicates that the "vicious fight" and use of pepper spray did not occur while plaintiff was in his cell but rather occurred in the hallway, while plaintiff was being escorted upstairs to have his fingerprints and photograph taken. Thus, although it is undisputed that a serious incident involving the plaintiff did occur during plaintiff's incarceration, there is no indication that it took place in an area subject to video surveillance. Defendant's Submission dated February 18, 1998, at p. 2. The court notes that the Detention Unit Regulations provide that in addition to video surveillance of the cells, Memorandum Order # 12-92 indicates that, "[i]f there is no other pressing need, the independent large screen monitor should be locked on the Finger-

print room when it is in use." Memorandum Order # 12-92, Page 4, Plaintiff's Exhibit A. However, neither party has alleged that the incident occurred in the fingerprint room. Although plaintiff asserts that the Regulations support the conclusion that defendants destroyed a videotape of plaintiff being forcibly controlled, he has not alleged that this incident took place while he was in his cell or in the fingerprint room. Thus, plaintiff has not proffered any support for his contention that this incident would have been recorded on videotape. Indeed, plaintiff's original submission asserts only that the tapes would reveal that plaintiff was injured as the result of having been handcuffed during many hours of his incarceration. Plaintiff's Submission of March 21, 1998 at Page 6. Therein, he asserts that the tapes would have "reflected his numerous requests for medical assistance and for the defendant officer to loosen or remove the handcuffs which were too tight." Certification of Patrick J. Whalen, Esq., dated January 27, 1998, at ¶ 4. If it is plaintiff's contention that this would rise to the level of a serious "incident" which would require preservation, the Court must disagree.

put on notice of a potential lawsuit during the relevant time period.

In *PBA Local No. 38, supra,* the Honorable Maryanne Trump Barry, U.S.D.J., denied plaintiff's motion to amend to add a claim for intentional spoliation or fraudulent concealment of evidence where the claim was grounded on the Police Director's removal of electronics equipment from his office upon resigning his position as the Director, sale of some of that equipment, and erasure or reuse of all tape recordings made. Judge Barry noted that, at the time the tapes were destroyed, no litigation was pending, and thus, distinguished the destruction of the tapes in that case from the deliberate concealment of evidence, despite discovery obligations, in *Viviano. PBA Local No. 38,* 832 F.Supp. at 834.

Similarly, the plaintiff here, has not sufficiently alleged facts showing that there was pending or probable litigation involving the plaintiff, nor that defendants had knowledge that litigation was probable at the time the evidence was destroyed.[7] Thus, plaintiff cannot satisfy the first two elements of the intentional spoliation tort. While the inquiry may end here, the Court will nonetheless, address the other elements.

■ The third element is the willful or, possibly, negligent destruction of evidence by the defendant which is designed to disrupt the plaintiff's case. As to this element, the plaintiff's claim has fatal shortcomings. The New Jersey Tort Claims Act provides, in pertinent part, that: "A public entity is not liable for the acts or omissions of a public employee constituting ... actual malice or willful misconduct." N.J.S.A. 59:2–10. In order for plaintiff to establish all of the essential elements of the tort of intentional spoliation of evidence or fraudulent concealment of evidence, it will be necessary for plaintiff to establish actual malice or willful misconduct on the part of the Trenton Police Department's employees. Since the New Jersey Tort Claims Act provides immunity for acts of actual malice or willful misconduct committed by its employees, the Trenton Police Department cannot be held liable for these acts on the part of its employees. Thus, the claim of intentional spoliation of evidence against the Trenton Police Department would be futile.

Further, the court is unconvinced that plaintiff's allegations of intentional spoliation of evidence state a claim upon which relief may be granted in connection with the individual defendants. As the defendants have pointed out, the plaintiff has not alleged sufficient facts to state a claim that the defendants intentionally destroyed the Detention Unit videotapes or documentation, if indeed, any ever existed.[8] In order to establish a claim of spoliation, it must be shown that the defendant intentionally failed to disclose the evidence to plaintiff (or in this case destroyed the evidence), and that plaintiff could not have learned of that evidence without the defendant's disclosure. *Fox v. Mercedes–Benz,* 281 N.J.Super. 476, 482, 658 A.2d 732 (1995). Plaintiff has asserted that the fact that defendant destroyed the videotapes and documentation creates an inference that such videotapes and documentation would incriminate defendants and thus mandates a finding that defendants intentionally destroyed the videotapes and documentation.[9] Additional-

---

7. *Compare Hirsch, supra,* and *Fox, supra,* where the alleged spoliation of evidence was on the part of the plaintiff, who would be in a peculiarly knowledgeable position as to potential litigation.

8. Plaintiff has based his claim of spoliation of documents concerning the incident upon the existence of Regulations which require that documentation be generated upon the occurrence of certain incidents, such as the use of pepper spray by officers. However, plaintiff has also provided Trenton Police Department documents establishing that this regulation was newly promulgated along with a series of other regulations. Plaintiff's February 26, 1998 Submission, Exhibit D, Memorandum Order 8–94 dated April 14, 1994.

When this fact is considered in connection with the fact that no additional, unproduced documentation has been uncovered, and that no deposition testimony reveals the preparation of such documents, there is no reason to believe that this documentation was generated and then destroyed, as opposed to not having been generated in the first instance.

9. Plaintiff cites *Arizona v. Youngblood,* 488 U.S. 51, 57, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), for the proposition that the good or bad faith of the State is irrelevant in instances where the State has failed to disclose exculpatory material. The reasoning of that case is inapplicable in the instant case for several reasons. First, while the

ly, plaintiff contends that he could not have learned of this evidence without defendants' disclosure. The court notes there is a distinction between plaintiff not having access to the fact that videotapes existed, and the plaintiff not having access to the underlying facts contained on the videotapes. Although plaintiff may not have been aware that tapes were being generated, plaintiff, who was a participant in the events, obviously has first-hand knowledge of what the tapes would reveal. Thus, this is not a case of a party being deprived of the evidence necessary to prove his claims, but rather is a question of whether additional or better evidence may be available. While the ability to introduce evidence of videotapes which might potentially support his claims would certainly strengthen his testimony, this is very different from the plaintiff in *Viviano*, who had no access to the underlying facts of the manufacturing defects which caused her injury, other than that which was revealed by the withheld CBS memo. See *Viviano*, 251 N.J.Super. at 121, 597 A.2d 543.

Whereas some courts "have attributed intent to a spoliator who has violated a court order or an agreement to preserve evidence", *Hirsch*, 266 N.J.Super. at 241, 628 A.2d 1108 (citations omitted), there are no New Jersey cases which support the plaintiff's contention in the instant case, that the "inference" of intentional concealment or destruction is sufficient to state a claim for intentional spolia-tion.[10] In fact, one New Jersey court has stated that where a spoliator has not violated a court order or an agreement to preserve

the evidence, "traditional tort principles suggest that courts should require plaintiffs seeking recovery for intentional spoliation of evidence to prove that the defendant intend-ed to produce the harm or knew with substantial certainty that the harm, interference with another's prospective civil suit, would follow." *Hirsch*, 266 N.J.Super. at 241, 628 A.2d 1108 (citing Pati Jo Pofahl, Note, *Smith v. Superior Court: A New Tort or Intentional Spoliation of Evidence*, 69 Minn.L.Rev. 961, 966 (1985)). This plaintiff has failed to do.

Videotapes of plaintiff in his cell were erased which, but for the occurrence of any unusual events, would have been destroyed during the ordinary conduct of the police department's daily routine. At most, the tapes were destroyed as a result of negligence on the part of the police department personnel. In fact, plaintiff has offered evidence which establishes that some of the Regulations which required the creation of documentation or preservation of the evidence were fairly new, having been promulgated less than three weeks before the incident, while others were frequently not complied with by the police department personnel.[11] While this lack of diligence is unfortunate, and may serve to augment plaintiff's claims in connection with the municipality's failure to properly train or supervise its police officers, it does not bolster the claim that defendants intentionally acted to impede plaintiff's claim. Clearly, defendants' acts do not rise to the level

---

existence of bad faith may not be relevant in the criminal context, it is a necessary element in order to establish a prima facie case of intentional spoliation of evidence in the civil context. Second, there is no indication, other than plaintiff's own speculation, that the altercation was videotaped, and thus, no reason to conclude that *Brady* material was withheld. Plaintiff certainly cannot seriously contend that the tapes made of plaintiff in his cell, which by plaintiff's own account would have evidenced plaintiff's prolonged handcuffing, would constitute exculpatory evidence.

10. Plaintiff relies on *Hazen v. Municipality of Anchorage, supra,* in support of his intentional spoliation claim. The court finds this case distinguishable. In *Hazen*, the defendants were charged with having altered tapes to eliminate

incriminating evidence, which would provide a much clearer indication of intent than the destruction of tapes in the ordinary routine.

11. See *e.g.*, May 5, 1987 Memorandum of Captain R.L. Kirkham, noting the frequency with which Detention Lieutenants were failing to complete required reports; May 20, 1993 Memorandum of Captain R.L. Kirkham, noting the "marked increase in carelessness." Plaintiff's March 21, 1998 Submission, Exhibit B; Memorandum Order 8–94 dated April 14, 1994, insti-tuting a requirement that complete police reports be submitted at the close of each shift upon the occurrence of serious incidents, such as, *inter alia*, when crimes are committed within the detention unit. Plaintiff's February 26, 1998 Submission, Exhibit D.

necessary to state a claim for intentional spoliation of evidence.[12]

Moreover, this court has failed to uncover, and plaintiff has failed to bring to this court's attention, any New Jersey cases where a claim for spoliation of evidence has been allowed against a defendant who has either not undertaken an affirmative duty to preserve the evidence or has not deliberately taken affirmative acts during the litigation to conceal relevant evidence from the plaintiff. *See, Allis–Chalmers Corporation Product Liability Trust*, 305 N.J.Super. at 558, 702 A.2d 1336(holding that the defendant manufacturer could not assert a third-party claim of spoliation of evidence against the insurance company as the insurance company had not affirmatively undertaken to preserve this evidence and it was not in the insurance company's possession or control); *Viviano, supra* (finding plaintiff could assert claim for spoliation of evidence against her employer where employer had concealed and misrepresented facts during discovery in suit against manufacturer).[13] Further, the fact that a police department has promulgated regulations regarding creation and preservation of documents, as was done here, does not create an independent cause of action when the public entity fails to follow its own policy. Although the plaintiff's argument that a party has a duty to preserve evidence, even in the absence of a court order, is certainly

true, no such duty had arisen at the time the documents and videotapes were allegedly destroyed, since that was well in advance of the initiation of litigation. Therefore, the destruction of these items cannot establish the intent required as an element of the intentional spoliation claim.

Plaintiff also cannot establish the fourth element, disruption of the plaintiff's case. As has been stated previously, the absence of the documentation regarding the use of pepper gas and the videotapes of the cell are all items which could be additional, useful evidence if, in fact, they substantiate plaintiff's claims. However, plaintiff is not prevented from proving his case as a result of their unavailability. This is to be contrasted with the information contained in the CBS memo in *Viviano*, which was otherwise wholly unavailable to that plaintiff, *Viviano*, 251 N.J.Super. at 121, 597 A.2d 543, or the destruction of the pallet in *Callahan* which was a "key piece of evidence ... [without which plaintiff] may be unable to prove the underlying action against Stanley." *Callahan*, 306 N.J.Super. at 497–98, 703 A.2d 1014. In those cases, not having specific pieces of evidence would actually have prevented those plaintiffs from proving their claims.[14] In the instant case, the evidence which is alleged to have been wrongfully destroyed is corroborative evidence and does not impair the plain-

---

12. Plaintiff has also asserted that the fact that in an unrelated incident in which an inmate committed suicide, two detention officers were involved in altering the log books to make it appear that they had conducted their rounds at different times precludes the conclusion in this case, that the destruction of the videotapes and documentation constituted mere negligence. See Memorandum of Captain Robert L. Kirkham dated February 23, 1993; Disciplinary Action/Charges & Specifications dated March 26, 1993 and accompanying Internal Investigation, Plaintiff's Submission dated March 21, 1998, Exhibits C & E. However, the court finds that plaintiff's position is not supported in that he attempts to create a link between an unrelated incident and this case, to fabricate a finding of specific intent to destroy evidence. This inference building is suspect, particularly in light of the fact that there is no indication that the officers involved in the suicide incident were the same officers involved in the incident with plaintiff.

13. Even the New Jersey Superior Court, Law Division, which permitted plaintiff to assert a negligent spoliation claim against his employer in connection with his claim against a manufacturer, based its finding upon the "existence of 'special circumstances' from which a jury could conclude that ... [the employer] gratuitously undertook a duty to preserve ... [the evidence] and failed to perform that duty." *Callahan v. Stanley Works*, 306 N.J.Super. 488, 497, 703 A.2d 1014 (Law Div.1997).

14. This would have been equally true in the *Allis–Chalmers* case, wherein the evidence which was the subject of the spoliation claim was the forklift which had overturned and caused an employee's death. 305 N.J.Super. at 552–53, 702 A.2d 1336. *Cf. Marinelli v. Mitts & Merrill*, 303 N.J.Super. 61, 696 A.2d 55 (App.Div.1997) (finding plaintiffs were prohibited from asserting claim for spoliation of evidence against defendant where defendant's destruction of evidence did not damage plaintiff by lack of evidence).

tiff's ability to prove his claims through his own testimony or other evidence.

The fifth element of a claim for intentional spoliation, damages proximately caused by the defendants' acts, is premature. This element can only be established, if at all, in the event that plaintiff is unable to win its lawsuit. The California court in *Smith* relaxed its damages standard ... "[requiring] that plaintiff prove her damages as a matter of 'just and reasonable inference.'" *Hirsch v. General Motors Corp.* 266 N.J.Super. 222, 242, 628 A.2d 1108 (Law Div.1993)(quoting *Smith, supra* at 29). In *Viviano,* the timing of the spoliation suit permitted damages to be calculated with some precision. *Hirsch,* 266 N.J.Super. at 242, 628 A.2d 1108. "Accordingly, the *Viviano* Court affirmed a nonspeculative jury award for compensatory damages and expenses, which deviates from the more speculative damages standard of the California approach." *Id.* Thus, in the event plaintiff were able to establish the other elements of a claim for intentional spoliation, plaintiff would be left with the unenviable task of proving that, but for the destruction of the videotapes and documentation, plaintiff would have succeeded in proving his claim, and, then, establishing the amount of damages which were the result of plaintiff's acts. It is not at all obvious that the New Jersey courts would permit recovery based upon such speculative proofs.

After a careful review of the spoliation cases which have been decided by the New Jersey courts, this court concludes that plaintiff's claim for intentional spoliation of evidence does not state a cause of action on which relief can be granted. Thus, plaintiff's motion to amend to assert a claim for intentional spoliation is futile and is denied.

#### 2. Negligent Spoliation of Evidence

■ As defendants have pointed out, "New Jersey Appellate Courts have not recognized the tort of negligent spoliation of evidence." *Allis–Chalmers Corp. Prod. Liab. Trust,* 305 N.J.Super. at 556, 702 A.2d 1336. Although the court is cognizant of the fact that the Law Division did permit a negligent spoliation claim in *Callahan v. Stanley*

*Works, supra,* the State's highest court has not yet addressed this issue. Thus, this court must base its decision on a prediction of how the New Jersey Supreme Court would proceed. *See,Pittston Co. Ultramar America Ltd., supra; see also, City of Erie, supra.*

The majority of New Jersey courts have determined that the appropriate remedy for the negligent destruction of evidence is to be found in the realm of discovery sanctions. "[W]here a defendant negligently spoliates evidence, there has been a failure to comply with civil discovery." *Hirsch,* 266 N.J.Super. at 256, 628 A.2d 1108. "The negligent loss of evidence is comparable to a party's failure to comply with discovery obligations, which may result in an order barring introduction of evidence at trial." *Nerney v. Garden State Hosp.,* 229 N.J.Super. 37, 40, 550 A.2d 1003 (App.Div.1988).[15] In light of the fact that no New Jersey appellate court has yet recognized a negligent spoliation claim and based upon the prior analysis, herein, this court must conclude that the New Jersey Supreme Court would not recognize the tort of negligent spoliation of evidence. Certainly, this court, which questions the viability and vitality of an intentional spoliation of evidence claim, would not broaden the cause of action to include negligent spoliation. As such, plaintiff's claim of negligent spoliation does not state a claim upon which relief can be granted. Therefore, plaintiff's motion to amend to assert such a claim is denied on futility grounds.

#### B. Unreasonable Delay in Being Brought Before a Judge

■ Plaintiff seeks to assert a claim that his due process rights were violated by the defendants as the result of his experiencing an unexplained forty (40) hour delay in being taken before a Municipal Court Judge. Defendants oppose this motion, proffering police department records which indicate that plaintiff was, in fact, taken to Municipal Court within 24 hours of his arrest, and, thus, are in direct conflict with Municipal Court records proffered by the plaintiff.

**15.** This position is not inconsistent with that taken by the federal courts. *See* footnote 4, *supra.*

The conflict contained in these records, however, does not further the defendants' assertion that such a claim should not be permitted. It merely supports the contention that there are factual disputes, which should properly be presented to a trier of fact for resolution. Finally, the court concludes that there will be no prejudice to the defendants and that little, if any, additional discovery, will be required. Therefore, plaintiff shall be given leave to amend his complaint to assert a claim of unreasonable delay before appearing before a Municipal Court Judge.

Plaintiff's motion to file a Fourth Amended Complaint, is granted in connection with the claim of "unreasonable delay in being brought before a judge," and denied in connection with the claim for negligent/intentional spoliation of evidence. An appropriate Order follows.

### ORDER

This matter having been opened to the Court by Patrick J. Whalen, Esq., of Lowenstein, Sandler, Kohl, Fisher & Boylan, counsel for plaintiff, seeking leave to amend his Third Amended Complaint to add two new causes of action, for negligent/intentional spoliation of evidence and for "unreasonable delay" in being brought before a Magistrate Judge, pursuant to *Fed.R.Civ.P.* 15(a), and the Court having considered the moving and opposition papers, and the replies submitted by both parties, and the Court further having entered a Memorandum on this date setting forth the Court's decision in this matter, which is being considered pursuant to *Fed. R.Civ.P.* 78, and for good cause shown,

IT IS on this 5th day of May, 1998,

ORDERED that plaintiff's motion for leave file a Fourth Amended Complaint to add two additional causes of action is granted in part and denied in part; it is further

ORDERED that plaintiff's motion to amend to assert a cause of action for negligent/intentional spoliation of evidence is denied; it is further

ORDERED that plaintiff's motion to amend to assert a due process claim for unreasonable delay in being brought before a Municipal Court Judge is granted; it is further

ORDERED that plaintiff shall file a Fourth Amended Complaint, revised in accordance with the above, within (10) days from the date of this Order.