Penny A. HAZEN, Appellant, and Cross-Appellee,

v.

MUNICIPALITY OF ANCHORAGE, Richard Stevens, William L. Casto, Tim Kasper, Michael Grimes, and Allen Bailey, Appellees, and Cross-Appellants.

Nos. S–477, S–567.

Supreme Court of Alaska.

April 25, 1986.

As Amended July 31, 1986.

Walter Share, Anchorage, for appellant/cross-appellee.

Susan L. Mendenhall, L.G. Berry, and Susan M. West, Robertson, Monagle, Eastaugh & Bradley, Anchorage, for appellees/cross-appellants.

Before RABINOWITZ, C.J., and MATTHEWS and MOORE, JJ.

OPINION

RABINOWITZ, Chief Justice.

The primary issue in this appeal involves the discovery sanctions imposed by the superior court in response to Penny Hazen's failure to turn over the customer lists of her massage parlor. The superior court dismissed Hazen's claims for false arrest and malicious prosecution and instructed the jury through an establishment order that the police had probable cause when they arrested Hazen for prostitution. We hold that the superior court abused its discretion in imposing these sanctions.

FACTS

Penny Hazen was the owner of The Body Shop, a massage parlor in Anchorage. In early 1977 she was an active opponent of a proposed municipal ordinance that would have strictly regulated massage parlors. She testified at a meeting of the municipal assembly and appeared on a taped television program to argue against the ordinance. Among the public supporters of the ordinance were police officers who were members of the Anchorage Police Department Vice Squad. The ordinance was scheduled for a vote on or about April 2, 1977.

On March 22, 1977, Officer Richard Stevens, wired with a hidden recorder, went to The Body Shop. Officers William Casto, Tim Kasper, and Michael Grimes waited nearby in an unmarked car equipped with electronic recording devices. Upon entering The Body Shop Officer Stevens was met by Hazen who introduced herself as "Kitten". The two discussed the services available; Hazen told Stevens that "nobody would be rushed" and that "all of our customers leave happy". Stevens selected the "deluxe massage" for $100 which consisted of a sauna, shower, chilled wine and an adult movie to be played while on "the magic carpet ride," an exchange of "dual nude massages" on a vibrating waterbed.

Both sides agree that Officer Stevens asked if sex would be available and that Hazen did not explicitly say that it would be available. Hazen contended that she emphatically denied that sex was available, telling Officer Stevens that he should go home and sleep with his wife, and that if he wanted sex he would have to "go down the block." Hazen's attorneys testified that when they originally listened to the arrest tape Officer Stevens had made of the conversation with a hidden recorder (the "arrest tape"), they had heard Hazen make these statements. Officer Stevens testified and a transcript of the arrest tape made in May 1984 indicates that Hazen told him "if we did it here, which we don't, do you think I'd tell you? It's illegal." The arrest tape transcript also indicates that when Officer Stevens told Hazen that he was leaving because sex was unavailable she replied, "I told you, you just weren't listening."

Officer Stevens testified that he concluded from the conversation that he had made an arrangement for sexual intercourse with Hazen for $100. Stevens paid Hazen $100 and went upstairs to a bedroom to get undressed. While in the bedroom Stevens radioed his fellow officers and instructed them to enter the building. When Hazen entered the bedroom Officer Stevens placed her under arrest. Officers Casto, Kasper, and Grimes assisted in the arrest, which was subsequently widely reported by the news media.

Following the arrest, Hazen's attorneys, Sandra Saville and Sue Ellen Tatter, called Municipal Prosecutor Allen Bailey and informed him that they wanted to listen to the arrest tape. Tatter testified that Bailey told her that the tape was not good for the prosecution's side.

Soon after the phone conversation Hazen, Tatter, Saville, and Bailey met and listened to the arrest tape. Hazen, Tatter and Saville testified that the tape was very clear and that they heard Hazen emphatically denying that sex was available. Bailey testified that the tape was not particularly clear.

Following the arrest, Officer Stevens prepared a report charging Hazen with assignation for prostitution. On June 27, 1977, Bailey moved to dismiss the criminal charges against Hazen. At the dismissal

hearing Hazen's attorneys requested that the arrest tape be preserved or that she be given a copy of the tape as Hazen was contemplating a civil suit. Bailey then advised the court that the tape would be preserved. Immediately after that statement, a male voice whispered, "[W]ait 'til you hear what is on the tape now." This remark was not audible in the open courtroom but was picked up by a microphone.[1] The remark came from the prosecutor's table. Seated at the prosecutor's table at the hearing were Bailey and an Assistant District Attorney who was not involved in the case.

On March 21, 1979, the day before the statute of limitations ran, Hazen filed suit against the four arresting officers and against the Municipality of Anchorage. The complaint charged all the defendants with false arrest, malicious prosecution, defamation, violation of state and federal civil rights by interfering with the right to speak out against the anti-massage parlor ordinance, and negligent hire.

During discovery, Hazen's civil attorneys[2] requested and received the arrest tape. They found the tape to be generally inaudible. Hazen then listened to the arrest tape with Saville and Tatter, her attorneys in the prior criminal proceedings. They concluded that it was not as clear as it had been when they had originally listened to it and that it had been altered. Thereafter, Hazen and her civil attorneys listened to the tape of the June 27, 1977 dismissal hearing, and heard the whispered comment, "[W]ait 'til you hear what is on the tape now."

Hazen subsequently moved to amend her complaint to include Bailey as a defendant and to add claims for violation of state and federal civil rights by destruction or alteration of the arrest tape against Bailey, the four police officers, and the municipality. The superior court granted the motion, and on April 21, 1982 Hazen filed an amended complaint. Defendants opposed the motion and later moved to dismiss the cause of action against Bailey, arguing that it was barred by the statute of limitations. The

court denied this motion on the ground that the statute of limitations did not begin to run until the aggrieved party either discovered or reasonably should have discovered the facts giving rise to the cause of action.

Shortly before trial began the defendants learned that Hazen kept customer lists. The defendants moved for discovery of any customer lists that Hazen had. At a hearing Hazen acknowledged that she had credit card records from 1982–83 and that she could remember some customers' names, but she refused to disclose them. During this hearing Hazen withdrew her defamation cause of action.

The superior court concluded that Hazen had knowledge of customer names and that she was willfully refusing to furnish these names to defendants. The court concluded that these names were relevant to defendants' ability to show that there was probable cause to arrest Hazen, because the customers could have provided information that Hazen's words meant that sex was being offered even though she didn't explicitly say so. The court therefore dismissed Hazen's claims for false arrest and malicious prosecution. The court also instructed the jury through an establishment order that as a result of Hazen's refusal to provide discovery it was an "established fact" that the police had probable cause to arrest Hazen and that The Body Shop was "at all times" a house of prostitution.

At the trial the superior court made several rulings shortly after Hazen rested her case. It directed a verdict in favor of the four police officers on the claims of alteration of evidence, holding that there was no evidence showing which, if any, of the officers had altered the arrest tape. The court denied a directed verdict for the municipality and Bailey on the tape alteration charge.

The superior court also directed a verdict in favor of all defendants as to Hazen's claims for violation of civil rights arising from the alleged false arrest and malicious

1. All court proceedings in Alaska are recorded.

2. Saville and Tatter, Hazen's attorneys in the criminal proceedings against her, did not represent Hazen in the prosecution of her civil claim.

prosecution. The court stated that the establishment order holding that there was probable cause was a complete defense to these claims.[3] The trial then continued with the remaining claims of violation of civil rights from the alteration of the arrest tape against the municipality and Bailey.

The superior court made several additional rulings at the conclusion of the trial. It ruled that the municipality could not be sued under § 1983 because Hazen had not shown that the tapes had been altered pursuant to an official "custom or policy." However, the court created an implied cause of action under the Alaska Constitution for deliberate violations of due process. The court ruled that this cause of action was available against the municipality because it could not be sued under § 1983 and because there was no state statute that covered Hazen's allegations. The superior court ruled that the municipality could be liable under this cause of action without a showing of official "custom or policy," and that punitive damages were available against the municipality. The superior court also ruled that the implied cause of action was not available against Bailey because § 1983 was a complete remedy as to him.

The case then went to the jury. The jury was instructed to find the defendants not liable for altering the tape if the evidence proved that, had Hazen's attorneys exercised reasonable diligence, they would have discovered the alleged alteration of the arrest tape prior to April 22, 1980.

The jury returned a general verdict finding Bailey and the municipality not liable, and the court awarded defendants costs and attorneys' fees. Hazen appealed and the defendants cross-appealed.

DISCUSSION

I. *Discovery Sanctions.*

As a discovery sanction for Hazen's refusal to turn over her customer lists, the superior court dismissed her false arrest and malicious prosecution claims. The court also entered an establishment order

instructing the jury that the police had probable cause for the arrest and that The Body Shop was at all times a well-known illegal house of prostitution. We conclude that the superior court abused its discretion in imposing these sanctions.

■■■■ The test for the validity of a discovery sanction that dismisses claims or orders facts or issues to be taken as established under Alaska R.Civ.P. 37(b)(2) is whether these claims or issues are "elements of the dispute that cannot be determined on the merits without disclosure of the evidence the Court has ordered the party to produce." *Bachner v. Pearson,* 479 P.2d 319, 324 (Alaska 1970) (citations omitted). If the issues established or claims dismissed are not related to the information that the party has refused to supply, then the discovery sanction is "mere punishment" and is impermissible. *Id.* at 324.

The superior court stated that the customer lists could be relevant to whether the police officers had probable cause to arrest Hazen:

> [I]f [they] talked to those customers, [the defendants] might well be able to prove that The Body Shop ... was and is a place of prostitution, that it was a well-known place, ... and that that was an element of the probable cause which the police had in interpreting the statements of Ms. Hazen and her actions on the day in question when the events led to her arrest.

Probable cause, however, depends on the facts that were known to the police officer at the time of the arrest. *E.g., Schmid v. State,* 615 P.2d 565, 574 (Alaska 1980); *City of Nome v. Ailak,* 570 P.2d 162, 170 (Alaska 1977). Information derived from the customer lists, discovered after the arrest and not known to the officers at the time of Hazen's arrest, has no bearing on the probable cause issue.

■■■■ Since the customer lists have no bearing on the issue of probable cause, we

---

3. The court also directed a verdict against Hazen on the negligent hire claim for relief. This ruling is not at issue on appeal.

hold that the superior court abused its discretion in dismissing Hazen's false arrest and malicious prosecution claims and in instructing the jury that the officers had probable cause for the arrest. Hazen is therefore entitled to a new trial on the false arrest and malicious prosecution claims against the police officers and the municipality.[3] We further hold that Hazen's customer lists are not relevant to the subject matter of Hazen's remaining claims for relief, and are therefore not discoverable under Alaska R.Civ.P. 26(b)(1).

■ We recognize that the discovery rules are to be broadly construed and that relevance for purposes of discovery is broader than for purposes of trial.[4] However, even under this broad concept of relevance the information sought still must be relevant to the subject matter of the action. 8 C. Wright & A. Miller, Federal Practice and Procedure § 2008 at 42 (1970); 4 J. Moore, Moore's Federal Practice § 26.56[1] (2d ed. 1984).

■ Any information gleaned from Hazen's customer lists would concern activities at The Body Shop. Such information could bear on whether The Body Shop was a house of prostitution and whether sex could be obtained even if not explicitly offered. Such information, however, is not relevant to the subject matter of this case.

This is a false arrest and malicious prosecution case, not a prostitution case. The elements of a false arrest claim are: (1) a restraint upon plaintiff's freedom (2) without proper legal authority. W. Prosser, Law of Torts § 11 (4th ed. 1971). *See City of Nome*, 570 P.2d at 169. The elements of a malicious prosecution claim are: (1) malice, (2) want of probable cause, and (3) termination of the proceeding in favor of the plaintiff. *Id. See Industrial Power v. Western Modular Corp.*, 623 P.2d 291, 298 (Alaska 1981).

The subject matter of these actions, therefore, concerns specifically what happened between Hazen and the police officers on the night of March 22, 1977. Information concerning the general activities at The Body Shop is irrelevant to this case and is therefore not discoverable.[5]

A. *Jury Verdicts on the Claims for Alteration of the Arrest Tape.*

■ The jury found Bailey and the municipality not liable on claims that they altered the arrest tape in order to impede Hazen's civil action. Hazen argues that the establishment order holding that there was probable cause was prejudicial error, affecting the jury's deliberations as to whether the tape was altered with the intent to impede her civil litigation.[6] We agree and hold that the verdicts must be

3. The superior court also directed a verdict against Hazen's civil rights claims arising out of the arrest on the grounds that probable cause was a complete defense to these charges and that the discovery sanction established probable cause. Since the sanction was erroneous, this would ordinarily mean that the claims could be maintained on retrial. At oral argument in conjunction with this appeal, however, Hazen's counsel conceded that all claims on retrial would be brought under state law. We need not determine whether a cause of action should be implied under the Alaska Constitution for these alleged civil rights violations because Hazen has common law causes of actions for false arrest and malicious prosecution that provide her a complete remedy for the alleged violations. *See State v. Haley*, 687 P.2d 305, 318 (Alaska 1984).

4. Alaska R.Civ.P. 26(b)(1) provides that it is not a ground for objection that the information sought in discovery will be inadmissible at trial "if the information sought appears reasonably

calculated to lead to the discovery of admissible evidence."

5. Such information would be relevant if Hazen's reputation were involved here. Hazen is not bringing a defamation cause of action, however, and Hazen's attorney stated at oral argument before this court that Hazen would not seek damages for injury to reputation and loss of business.

Appellees' attorney also contended at oral argument that the information could be used to impeach potential testimony by Hazen that sex never occurred at The Body Shop. Such testimony, however, would also have no relevance to the present claims for relief.

6. Since no special interrogatories were used, it is uncertain whether the jury found the defendants not liable on these grounds or on the grounds that Hazen should have discovered the tape alteration before April 22, 1980.

vacated and Hazen given a new trial on these claims.

Alaska R.Civ.P. 61 provides in part:

No error ... in any ruling or order or in anything done or omitted by the court ... is ground for granting a new trial or for setting aside a verdict ... unless refusal to take such action appears to the court inconsistent with substantial justice.

In applying this rule we have stated that our function is not to consider how the error would have affected us if we had tried the case, but to consider "how it may have affected a jury of reasonable laymen." *Poulin v. Zartman*, 542 P.2d 251, 261 (Alaska 1975). An erroneous instruction is prejudicial if we cannot say that the jury's verdict may not have been different had it not been so instructed. *Howarth v. Pfeiffer*, 423 P.2d 680, 684 (Alaska 1967).

The superior court instructed the jury that "for the purposes of this case ... it is an established fact that the police officers had reasonable grounds or probable cause to arrest the plaintiff," and that "[y]ou shall regard [this as an established fact] in considering your decision at the end of this case."

It is true that the establishment order did not exclude evidence that the tape originally had contained explicit exculpatory statements by Hazen and that the tape had been altered. It was possible for the jury to have inferred despite the establishment order that Bailey or some municipal employee had a motive to remove unfavorable portions of the tape because at the time of the arrest he would not have known whether there was "probable cause."

■ We conclude nevertheless that there is too great a possibility that a jury of reasonable laymen would have been prejudicially affected by the establishment order. The court instructed the jury that it was to regard probable cause as an established fact. At one point during his closing

argument, defendants' attorney attempted to downplay the significance of the whispered comment at the dismissal hearing by suggesting that the inference from that comment could be that the arrest tape was not a "bad tape" from the police officers' perspective. Defendants' attorney then stated:

[It] might be a bad tape in the sense of getting a criminal conviction beyond a reasonable doubt, because that's a different standard. But for probable cause for a false arrest case? We'll stand on that. In fact there was probable cause for the arrest of Penny Hazen. And that would have defeated ... the claim for false arrest.

It is possible that the jury concluded that since the police had probable cause to make the arrest there was not sufficient motive to alter the tape. Given this possibility, the verdicts must be vacated and a new trial held against Bailey and the municipality on the claim that they altered the arrest tape in order to impede Hazen's civil actions.

## II. *Directed Verdicts in Favor of the Four Police Officers on the Claims for Alteration of the Arrest Tape.*

Shortly after Hazen rested her case, the superior court directed verdicts in favor of the four police officers regarding the claims that they had altered the arrest tape. The court stated that there was no evidence from which a jury could conclude that any of the individual officers had actually altered the arrest tape. The court stated that viewing the evidence most favorably to Hazen,

[it] would have to be deemed to establish that the tape was altered, that it was altered favorably to the Municipality, and that it was done by somebody that had it in his or her custody. But the somebody consists of a number of people, and there is no evidence to show which one of them accomplished the alteration. It's just like shooting into the dark.[7]

7. The superior court refused to direct a verdict for the municipality because there was evidence which could establish that the tape was at all times in the custody of the municipality's agents and employees, and that it was altered by one of those agents or employees. The court also de-

Hazen argues that the superior court should not have directed a verdict because there was evidence that all the police officers had access to the arrest tape and that they were all aware of a possible civil suit. She also argues that the jury could have chosen to disbelieve the testimony of some, none, or all of the officers that they did not alter the tape.

■ Our role in reviewing the superior court's grant of a directed verdict is to ascertain whether or not the evidence indicates that there is "room for diversity of opinion among reasonable people." *Bubbel v. Wien Air Alaska, Inc.,* 682 P.2d 374, 377 (Alaska 1984). There is no evidence in the record that would give a jury a reasonable basis to conclude which, if any, of the officers altered the tape. Nor is there any evidence in the record as to any joint agreement or conspiracy between the officers to alter the tape. While there was certainly evidence as to access and motive, we agree with the superior court that without anything more to show that a particular officer altered the tape, it would be "shooting in the dark" to conclude that any of them individually altered the tape.

Based on the foregoing we hold that the superior court did not err in directing verdicts in favor of the officers on the alteration claims.

III. *Intentional Interference with Prospective Civil Action by Spoilation of Evidence.*

The superior court fashioned an implied cause of action under the Alaska Constitution for deliberate violations of due process arising from Hazen's allegations that the arrest tape had been altered. The court held that this cause of action was available. against the municipality because there was no common-law cause of action for these allegations and the municipality could not be sued under § 1983 because no "custom or policy" had been shown. The court held that the constitutional cause of action was not available against Bailey because Hazen could obtain a complete remedy against him under § 1983.[8]

■ We hold that Hazen has a common-law cause of action in tort for intentional interference with prospective civil action by spoilation of evidence.[9] Since Hazen can obtain a complete remedy under this cause of action we need not decide whether a cause of action should be implied under the Alaska Constitution for these allegations. *See State v. Haley,* 687 P.2d 305, 318 (Alaska 1984).

In recognizing this "new tort" we find persuasive the reasoning in *Smith v. Superior Court for the County of Los Angeles,* 151 Cal.App.3d 491, 198 Cal.Rptr. 829 (1984). In *Smith,* plaintiff's car had collided with a van. Immediately after the accident, the van was towed to a dealer for repairs. The dealer made an agreement with plaintiff's counsel to maintain certain parts of the van pending further investigation. The dealer thereafter destroyed, lost or transferred these parts, making it impossible for plaintiff's experts to test them. Plaintiff sued the dealer. *Id.,* 198 Cal. Rptr. at 831.

The California Court of Appeals reversed the trial court's dismissal of the complaint, recognizing a new tort for intentional spoilation of evidence. The court pointed out that "new and nameless torts are being recognized constantly" and that the "common thread woven into all torts is the idea

---

termined not to direct a verdict for Bailey, stating that the evidence, viewed most favorably to Hazen, could lead to the inference that Bailey had altered the tape. The key additional evidence against Bailey that did not exist against the police officers was apparently the whispered comment made from the prosecutor's table at the dismissal hearing. From this evidence an inference could be drawn that Bailey knew about the alteration of the tape and had something to do with it.

8. Hazen's counsel conceded at oral argument that no federal claims would be brought on remand.

9. Although this issue was neither briefed nor discussed at oral argument, we will decide it in order to facilitate the proceedings on remand.

of unreasonable interference with the interests of others." *Id.* at 832 (citation and emphasis omitted). The court analogized to the tort of intentional interference with prospective business advantage and stated that a prospective civil action in a product liability case is a valuable "probable expectancy" that the Court "must protect from the kind of interference alleged herein." *Id.* at 836, 837.

 Hazen's prospective false arrest and malicious prosecution actions were valuable probable expectancies. If the arrest tape was intentionally altered, this was an unreasonable interference with these expectancies that can be remedied in tort.

 On remand Hazen therefore has the following causes of action available to her: (1) common-law claims for false arrest against the four police officers and the municipality, (2) common-law claims for malicious prosecution against the four police officers and the municipality, and (3) common-law claims for intentional interference with prospective civil action by spoliation of evidence (the arrest tape) against the municipality and Bailey.[10]

## IV. *Statute of Limitations/Reasonable Diligence.*

The superior court instructed the jury that if the defendants proved that if Hazen's attorneys had used reasonable diligence they would have discovered the alteration of the arrest tape prior to April 22, 1980, then defendants were not liable on the tape alteration claims. The court based this instruction on the "discovery rule" that the two-year statute of limitations[11] did not begin to run until the aggrieved party discovered or reasonably should have discovered the facts that gave that party a cause of action. Since the tape alteration claims were filed on April 21, 1982, the statute of limitations would bar the cause of action if Hazen should have discovered the altered tape more than two years prior to that date.

The defendants argue that the superior court erred in applying the "discovery rule." They argue that the statute of limitations began to run when the tort was completed. They further argue that if Bailey's whispered comment at the June 27, 1977 hearing indicated that the tape had been altered, then the statute of limitations started running on June 27, 1977, since the tort (tape alteration) must have been completed by that date. Defendants argue, therefore, that the statute of limitations ran on June 27, 1979.

 We hold that the superior court correctly applied the discovery rule. In *Hannebuth v. Bell Helicopter International*, 694 P.2d 143 (Alaska 1984), we held that the discovery rule could have application outside the professional malpractice area. We stated:

> [I]t is the nature of the problems faced by plaintiff in discovering his injury and its cause, and not the occupation of the defendant, that governs the applicability of the discovery rule.

*Id.* at 144 (citation omitted).

We conclude that the nature of Hazen's problems in discovering her injury warranted giving the discovery rule instruction in this case. There was no reason for Hazen to have suspected that the arrest tape had been altered. At the dismissal hearing, after Hazen requested a copy of the arrest tape or an assurance that it would be pre-

---

10. Defendants argued on cross-appeal that punitive damages could not be recovered under the tape alteration claims in the absence of any showing of compensatory damages. At trial Hazen could not show compensatory damages because such damages would have been based on the theory that the tape alteration made it more difficult and expensive to prove her claims for false arrest and malicious prosecution. These other claims, however, had already been dismissed by the superior court.

Since Hazen's claims for false arrest and malicious prosecution have been revived, it will be possible for her to show compensatory damages relating to her tape alteration claims. We therefore need not address this issue.

11. AS 09.10.070 provides that actions must be brought in two years for

(1) ... any injury to the person or rights of another not arising on contract and not specifically provided otherwise.

served, Bailey stated on the record that the tape would be preserved. The instruction properly placed before the jury the question of whether Hazen's failure to discover the injury prior to April 22, 1980 was justified.

Hazen argues that the jury should not have been instructed on reasonable diligence. She argues that there was no evidence that she did not exercise reasonable diligence and that Bailey should be estopped from raising a reasonable diligence defense, because any delay in discovering the tape alteration was the direct result of Bailey's representations that he would preserve the tape.

The basic elements of an estoppel claim are:

(1) conduct, acts, language, or silence amounting to a misrepresentation or a concealment of the existence of a material fact; (2) the truth concerning the fact must be unknown to the other party who claims the benefit of the estoppel; (3) the party claiming the benefit must have relied upon the conduct, acts, language, or silence, of the other party and must have been led to act upon the work or conduct of the other.

*Stevenson v. Burgess*, 570 P.2d 728, 732 (Alaska 1977). Here there is a factual dispute as to whether Bailey's assurance was a misrepresentation, since the parties dispute whether the tape was altered. There is also a question of whether Hazen actually relied on the assurance or whether she was simply dilatory in not discovering the alteration within three years after the tape was made. Whether Bailey should be estopped from asserting any statute of limitations defense is therefore a question for the jury. *Cf., Groseth v. Ness*, 421 P.2d 624, 626 (Alaska 1966) (statute of limitations/estoppel issue tried before the jury).

The defendants argue that Hazen's lack of diligence in not discovering the tape before April 22, 1980 should be established as a matter of law because the arrest tape was a matter of public record, available to Hazen at any time. A reasonable jury could conclude that it was reasonable for Hazen to have failed to discover the altered tape before April 22, 1980, given Bailey's assurance and the fact that she had already listened to the tape. A reasonable jury could also conclude that since the arrest tape was Hazen's most crucial piece of evidence, it was unreasonable for her to have not listened to the tape again prior to April 22, 1980. We hold therefore that the issue of Hazen's diligence was properly submitted to the jury.

### V. *Punitive Damages Against the Municipality.*

We have recently held that under Alaska law punitive damages cannot be awarded against a municipality absent statutory authorization. *Richardson v. Fairbanks North Star Borough*, 705 P.2d 454, 456 n. 1 (Alaska 1985). Hazen argues that *Richardson* involved a municipality's negligence, and that punitive damages should be available against municipalities in cases of gross or intentional misconduct.

██ The same policy reasons to not allow punitive damages against municipalities exist, however, irrespective of the conduct alleged. An award of punitive damages against a municipality will only "punish" the innocent taxpayers, the group which is supposed to benefit from the public example set by a punitive damages award. *See, City of Newport v. Facts Concerts, Inc.*, 453 U.S. 247, 267, 101 S.Ct. 2748, 2759–60, 69 L.Ed.2d 616, 632 (1981); *Fisher v. City of Miami*, 172 So.2d 455, 457 (Fla.1965). Further, since a municipality can have no malice independent of the malice of its officials, damages awarded in order to punish are not sensibly assessed against the municipality itself. *Newport*, 453 U.S. at 267, 101 S.Ct. at 2759–60, 69 L.Ed.2d at 632.

It is also unclear whether an award of punitive damages would have any substantial deterrent effect. It is unlikely that individual officials would have to or be able to pay sizable punitive damage awards assessed against a municipality. Further, as one court stated, protection against future misconduct can be obtained without resort-

ing to punitive damage awards which the public will have to foot:

> It is assumed that public officials will do their duty, and if discipline of a wrongdoing municipal employee is indicated, appropriate measures are available through the electorate, or by superior officials responsible to the electorate.

*Ranells v. City of Cleveland,* 41 Ohio St.2d 1, 321 N.E.2d 885, 888 (1975) (citation omitted).

 We therefore hold that in the absence of statutory authorization punitive damages are not available against a municipality, irrespective of the nature of the conduct involved.[12]

AFFIRMED in part, REVERSED in part and REMANDED for further proceedings in accordance with this opinion.

BURKE and COMPTON, JJ., not participating.

Paul R. Lyle, Asst. Atty. Gen., Fairbanks, Norman C. Gorsuch, Atty. Gen., Juneau, for petitioner.

No appearance for respondent.

---

12. The municipality also argues that it may not be held liable for the tape alteration under a theory of respondeat superior without a showing of an official custom or policy pursuant to which the alteration occurred. This contention is without merit. The cases the municipality cites concern § 1983 and are not apposite here. The "official custom or policy" requirement is based explicitly on the language and legislative history of § 1983. *See Monell v. Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611, 636 (1978).

AS 09.65.070 provides:

> Except as provided in this section, an action may be maintained against a municipality in its corporate character and within the scope of its authority.

AS 09.65.070(d)(2)'s "discretionary function" exception is inapplicable here. We have held that this exception applies to "planning" decisions, which are "basic policy decisions that are expressly entrusted to a coordinate branch of government." *Plancich v. State,* 693 P.2d 855, 857 (Alaska 1985). A decision to alter an arrest tape does not fall within this exception.