Paul Charles FLYNN, Alexie Paul Flynn, natural father of Paul Charles Flynn, and Maggie Flynn, natural mother of Paul Charles Flynn, Appellants,

v.

E.I. du PONT de NEMOURS AND COMPANY, and Remington Arms Company, Inc., Appellees.

Nos. S–8551.

Supreme Court of Alaska.

Sept. 17, 1999.

Rehearing Denied Nov. 10, 1999.

Phillip Paul Weidner, Weidner & Associates, Inc., Anchorage, for Appellants.

John M. Conway, Atkinson, Conway & Gagnon, Anchorage, Dale G. Wills and James P. Dorr, Wildman, Harrold, Allen & Dixon, Chicago, Illinois, and Karin S. Schwartz, Debevoise & Plimpton, New York, New York, for Appellees.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

After settling his products liability claim, Paul Flynn moved for modification of a protective order requiring him to return all documents designated confidential by the defendant manufacturer. Flynn had stipulated to entry of the order. The court denied his motion and Flynn appeals. Because Flynn has not demonstrated adequate justification for relief from the order to which he had agreed, we affirm.

### II. FACTS AND PROCEEDINGS

Paul Flynn and his parents (Flynn) sued E.I. du Pont de Nemours and Company and its subsidiary, Remington Arms Company, (collectively du Pont) for personal injuries allegedly caused by the accidental discharge of a Remington Model 552 rifle. During litigation, du Pont required Flynn to stipulate to entry of a protective order before it produced copies of thousands of documents Flynn had sought through discovery. The protective order required Flynn, upon resolution of the dispute, to return all documents Remington designated confidential. In July 1993 Flynn's attorney signed and returned the stipulation, thus agreeing to entry of the order; but by letter to du Pont's attorney, Flynn's counsel also stated that he reserved the right to seek later modification.

Four years later, after settling the personal injury claim, Flynn sought modification of the order.[1] Flynn's attorney, Phillip Paul Weidner, stated in a supporting affidavit that he had agreed to the order on an "emergency, temporary basis" in response to du Pont's insistence, but that he wished to retain the documents for "professional and educational purposes." Du Pont opposed modification. The court denied Flynn's motion, as well as his motion for reconsideration. It determined that Flynn had failed to demonstrate that modification was warranted. Flynn appeals.

### III. DISCUSSION

#### A. Standard of Review

 Although requests for modification of discovery orders are generally reviewed for abuse of discretion,[2] this case turns on two unresolved questions of law. We review these questions—the appropriate legal standard governing modification of discovery orders, and the proper placement of the burden of proof—de novo.[3] In doing so, we will adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[4]

#### B. Burden of Proof

 The superior court required Flynn to demonstrate that modification was warranted because he had voluntarily stipulated to the protective order. Flynn argues that he should not have borne the burden of proof. We disagree.

---

1. Although it appears that the real beneficiary of modification would be Flynn's attorney, not Flynn, we attribute the arguments for modification to Flynn because Paul Flynn was the lead party seeking modification below and he is the lead appellant.

2. We generally review discovery orders for abuse of discretion. See Jones v. Jennings, 788 P.2d 732, 735 (Alaska 1990). Federal courts also apply this standard to requests for modification. See Beckman Indus., Inc. v. International Ins. Co., 966 F.2d 470, 472 (9th Cir.1992).

3. See Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

4. See id.

*Jochims v. Isuzu Motors, Ltd.*[5] is directly relevant. The plaintiff there sought to modify a stipulated protective order.[6] The district court rejected his contention that it was the defendant's burden to "demonstrate the need for maintaining the existing protective order."[7] It noted that there is general unanimity among courts that a party to a stipulated order seeking to modify that order bears the burden of demonstrating "particular good cause" in order to succeed.[8] The court held:

> The courts' rationale for this standard is that a party which in good faith negotiates a stipulated protective order and then proceeds to produce documents pursuant to that protective order is entitled to the benefit of its bargain; namely, to rely upon the terms of the stipulated protective order.[9]

We agree with this reasoning, and conclude that the superior court did not err in placing the burden of proof on Flynn.

## C. *Request for Modification of Stipulated Order*

■ A stipulated protective order is founded on an agreement between parties. We will not disturb such an agreement absent justification. We find no such justification here.

Flynn has advanced two principal rationales for modification. First, Flynn's counsel asserts that he wishes to retain the documents for his own benefit in order to maintain the integrity of his files and to study them for purposes of future litigation. Second, he asserts that he wishes to retain the documents for purposes of public access because they may be destroyed under du Pont's document destruction policy. He also claims that the interest in public access to these documents outweighs any confidentiality concerns du Pont may have because the "blanket" protective order he signed covers a significant number of documents which contain neither trade secrets nor privileged information.

Du Pont argues that retention of the documents for the sole benefit of Flynn's attorney cannot justify rescission of the parties' knowing, voluntary, court-ratified agreement. Because Flynn's attorney currently has no pending claims against du Pont, du Pont contends that any claim that the documents will be useful to him in future litigation is purely speculative.

Du Pont also asserts that modification is not warranted by the possibility the documents might be destroyed. It asserts that Flynn's evidence of du Pont's document destruction policy is outdated and inaccurate. At oral argument before us, counsel for du Pont represented that the documents will be available to future litigants as long as there is an ongoing need for them in litigation and assured us that "there is no threat to the existence of these documents." We accept those representations as the guarantee of du Pont and its counsel that the documents will remain available and will not simply be destroyed upon the conclusion of Flynn's appeal in this case.[10]

We recognize the significant policy concerns underlying Flynn's attempt to retain the documents to maintain their availability

---

**5.** 145 F.R.D. 499 (S.D.Iowa 1992). This case is sometimes referred to as *"Jochims I"* to distinguish it from two other similarly titled cases. *See Jochims v. Isuzu Motors Ltd.,* 148 F.R.D. 624 (S.D.Iowa 1993) (*Jochims II*), *modified by Jochims v. Isuzu Motors Ltd.,* 151 F.R.D. 338 (S.D.Iowa 1993) (*Jochims III*).

**6.** *See Jochims I,* 145 F.R.D. at 500–01.

**7.** *Id.* at 501.

**8.** *Id.* at 501. In contrast, courts disagree about the proper placement of the burden of proof in requests for modification initiated by third party intervenors. *See* 8 Charles Alan Wright et al., *Federal Practice and Procedure* § 2044.1, at 574–84 (2d ed.1994) (cataloging a range of approaches towards modification from permissive to strict). *Compare Wilk v. American Med. Ass'n,* 635 F.2d 1295, 1299 (7th Cir.1980) (allowing permissive modification), *with Martindell v. International Tel. & Tel. Corp.,* 594 F.2d 291, 296 (2d Cir.1979) (imposing strict limitations on modification).

**9.** *Jochims I,* 145 F.R.D. at 501–02 (citations omitted).

**10.** As du Pont observes, we have recognized spoliation of evidence as a tort in Alaska. *See Hazen v. Municipality of Anchorage,* 718 P.2d 456, 463–64 (Alaska 1986).

to future litigants in the event of their destruction by du Pont. Nonetheless, having agreed to and benefitted from the protective order, Flynn cannot obtain modification of the order for solely self-interested reasons or speculative public policy concerns.

Our decision here is informed by the opinions of federal courts considering this issue. Some federal courts have permitted modification of protective orders when the interests of third parties or the public outweigh the protected party's interest in maintaining secrecy.[11] But Flynn has cited no authority supporting modification under the circumstances found here. The key cases allowing modification involve relief sought by or for the benefit of third parties.[12] They support modification for general public policy reasons, not for the benefit of an original party or his attorney. Flynn's request exceeds the boundaries staked out by those courts that freely allow modification. The superior court correctly concluded that Flynn had offered no reason justifying relief from the protective order.

### D. *Duress*

█ Flynn also argues that the agreement should be voided because he entered into it under duress. To prevail on a claim of duress, Flynn must establish that: (1) he involuntarily accepted du Pont's terms; (2) the circumstances permitted no alternative; and (3) those circumstances were the result of coercive acts by du Pont.[13] Flynn has failed to demonstrate that he lacked viable alternatives to accepting du Pont's terms.[14] He could have tried to negotiate different terms or challenged du Pont's terms in the superior court. If necessary, he could have sought to continue the scheduled discovery to give the court time to resolve this dispute. Therefore, we find no basis for his claim of duress.

### E. *Letter Reserving Right to Seek Modification*

█ The letter of Flynn's counsel accompanying the stipulation and purporting to reserve the right to seek modification of the order does not help either his claim of duress or his request for modification. It stated:

> As we discussed in our conversation, and pursuant to our understanding reached in same, I am signing this stipulation so that the materials you have been holding pursuant to our previous discovery requests, and so that the materials we anticipate receiving copies of in our upcoming discovery inspection ... during the week of July 19, 1993 may be provided by your clients, with the specific understanding that I am reserving my right to approach the court to modify any of the terms and conditions of same. That is, I maintain that certain recitations and conditions in said order are not well taken and warranted, however, I am agreeing to sign same at this juncture to avoid further delay in discovery, but I will be approaching the court to modify same, on the grounds the order sought is over broad and not justified.

This letter permits findings that Flynn's counsel believed himself to be acting under pressure from du Pont, that he considered the order overbroad, and that he communicated his dissatisfaction to du Pont. But counsel's affidavit accomplishes the same thing. A mere subjective perception of urgency—or mere dissatisfaction with the terms of an agreement—does not suffice to establish a claim of duress voiding that agreement.

█ Nor do the recitations in this letter justify modification of the agreement. By its own terms, the letter has no substantive

**11.** *See, e.g., Beckman Indus., Inc. v. International Ins. Co.,* 966 F.2d 470, 475–76 (9th Cir.1992); *Wilk,* 635 F.2d at 1299; *Kraszewski v. State Farm Gen. Ins. Co.,* 139 F.R.D. 156, 159–60 (N.D.Cal. 1991).

**12.** *See, e.g., Beckman,* 966 F.2d at 475 (involving third party intervenors seeking modification); *Kraszewski,* 139 F.R.D. at 158–60 (involving modification sought by class counsel to benefit plaintiffs in another pending suit).

**13.** *See Helstrom v. North Slope Borough,* 797 P.2d 1192, 1197 (Alaska 1990).

**14.** According to du Pont, it conditioned copying, but not inspection, of the documents on a stipulated protected order. According to Flynn, du Pont also conditioned inspection of the documents on signing the order.

effect. It does not enlarge Flynn's preexisting rights. It simply reserves his right to seek modification; he has now exercised that right. Counsel's statement that he believed certain provisions in the order to be unwarranted does not affect our assessment of the merits of his motion. And it does not affect Flynn's obligations under the agreement his counsel signed.

## IV. CONCLUSION

We AFFIRM the superior court's denial of Flynn's motion.