**Richard HARRIS, Appellant,**

v.

**AHTNA, INC., Ahtna Government Services Corporation, Ken Johns, Paul Tony, and Neil Anderson, Appellees.**

**No. S–11769.**

Supreme Court of Alaska.

Sept. 26, 2008.

---

William G. Royce, Law Office of William G. Royce, Anchorage, for Appellant.

Patrick B. Gilmore and Christopher J. Slottee, Atkinson, Conway & Gagnon, Anchorage, for Appellee Ahtna, Inc.

Michael C. Geraghty and D. Elizabeth Hanner, DeLisio Moran Geraghty & Zobel, P.C., Anchorage, for Appellee Ahtna Government Services Corporation.

Samuel J. Fortier, Fortier & Mikko, P.C., Anchorage, for Appellees Ken Johns, Paul Tony, and Neil Anderson.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

## OPINION

FABE, Chief Justice.

## I. INTRODUCTION

Ahtna Government Services Corporation, a subsidiary of Ahtna, Inc., was organized in 1999. Ahtna, Inc. held a fifty-one percent interest in Ahtna Government Services, while Richard Harris held forty-nine percent. As president of Ahtna Government Services, Harris facilitated a number of deals between the company and two other companies with which he had relationships, Pacific Native Development Corporation and AEI Pacific. After Harris was terminated from Ahtna Government Services in 2001, it brought suit against him for breach of fiduciary duty and rescission of the stock purchase agreement. Harris counterclaimed on a number of grounds, adding claims against Ahtna, Inc., several Ahtna directors, and Ahtna Government Services's chief financial officer. The trial court found against Harris and awarded nearly $1 million in damages and attorney's fees. Harris appeals, arguing that the trial court imposed an incorrect burden of proof on him, that its findings of fact regarding several transactions were clearly erroneous, and that it improperly admitted an exhibit at trial. Because Ahtna Government Services proved its claims by clear and convincing evidence, because the trial court's factual findings were not clearly erroneous, and because the trial court's admission of the exhibit was not an abuse of discretion, we affirm the trial court's decision in all respects.

## II. FACTS AND PROCEEDINGS

### A. 1999 Through Early 2001

Ahtna, Inc. is a regional corporation created under the Alaska Native Claims Settlement Act. In the spring of 1999, Darryl Jordan, then president of Ahtna, Inc., asked Harris to join the company in forming a new Ahtna, Inc. subsidiary, Ahtna Government Services Corporation. Harris agreed. Ahtna Government Services's ostensible purpose was to pursue government contracts under the auspices of the United States Small Business Administration's Section 8(a) program.[1] At this point, Harris was also closely related to two other companies. Harris owned Pacific Native Development Corporation, his wife, Sandra Harris, was its president,[2] and he was an officer, and at certain points, president, of AEI Pacific. Pacific Native Development assisted section 8(a) firms in procuring government contracts, and AEI Pacific was a section 8(a) contracting firm.

On May 27, 1999, Ahtna Government Services was incorporated. Ahtna, Inc. owned fifty-one percent of Ahtna Government Services's shares and Harris owned forty-nine percent. Ahtna Government Services's or-

---

1. This program "is designed 'to assist eligible small disadvantaged business concerns [to] compete in the American economy through business development.'" *Lexington Mktg. Group, Inc. v. Goldbelt Eagle, LLC,* 157 P.3d 470, 471 (Alaska 2007) (quoting 13 C.F.R. § 124.1 (2006)).

2. Mrs. Harris's testimony at trial suggested that she became president of Pacific Native Development at Harris's request because the Ahtna, Inc. board had told Harris he could not be president of Pacific Native Development and Ahtna Government Services at the same time, and because "[t]here was no other employee in the office to become president."

ganizational meeting was held in August 1999. The board consisted of five members, including Jordan as chairperson and Harris as president. In the two-year period between Ahtna Government Services's incorporation and Harris's termination, Harris engineered a number of transactions, each of which the trial court determined was self-dealing and unfair to Ahtna Government Services, breaching Harris's fiduciary duty to the company. Following is a summary of these transactions, based on the trial court's findings:

### 1. The Clear project

AEI Pacific was the general contractor for a roofing job at Clear Air Force Base that began in the fall of 1999. When AEI Pacific submitted its bid for the work in May of that year, Harris personally guaranteed the bonding for the contract, as did Pacific Native Development. By the time it was awarded the contract, AEI Pacific was insolvent. As president of the company, Harris understood AEI Pacific's financial condition. In November 1999 the Clear project itself was in substantial financial jeopardy, due to significant unpaid bills and the approaching winter. On November 3 Harris, as the president of Ahtna Government Services, signed a subcontract with AEI Pacific committing Ahtna Government Services to complete all remaining work on the project. On November 30 Harris, again in his capacity as Ahtna Government Services president, had Ahtna Government Services pay AEI Pacific's overdue freight bills so that materials could be delivered to complete the project. Despite the extremely cold weather, and against the recommendation of an AEI Pacific employee who had visited the job site, Harris pushed the crew to complete the project through the winter. To postpone the work until spring would have triggered liquidated damages against AEI Pacific, for which Harris would have been personally liable—AEI Pacific was insolvent and Harris had guaranteed the bond. Ahtna Government Services ultimately incurred a $191,000 loss on the project, which the trial court awarded as damages to Ahtna Government Services.

### 2. The Kulis project

On the same day that he authorized transfer of the Clear project, Harris, in his capacity as Ahtna Government Services president, signed a subcontract committing Ahtna Government Services to complete another AEI Pacific project, at Kulis Air National Guard Base. Due to AEI Pacific's insolvency, the Kulis project was, like the Clear project, plagued by unpaid debts. The Kulis project was independently bonded, but $48,000 of losses could not be collected. Ahtna Government Services therefore incurred a $48,000 loss on the project, which the trial court awarded as damages to Ahtna Government Services.

### 3. The Pacific Native Development office space

Pacific Native Development was committed to a lease of office space, a portion of which Harris directed Ahtna Government Services to sublease. At some point Ahtna Government Services assumed the entire lease. The trial court found that the rent Ahtna Government Services paid was excessive because the company did not need more than one-third of the space and that Ahtna Government Services was overcharged by at least $104,000. The trial court awarded these damages to Ahtna Government Services.

### 4. The cars

Ahtna Government Services rented two vehicles, a Land Rover and a Ford Expedition, from Pacific Native Development at Harris's behest. Ahtna Government Services paid $800 per month for rental of the former and $1,100 per month for rental of the latter. The trial court found that the reasonable monthly rental rates for these vehicles were $300 and $350, respectively. Ahtna Government Services later purchased these vehicles at Harris's behest. It paid $28,585 for the Land Rover, which the trial court valued at $23,185, and $31,150 for the Expedition, the Kelly Blue Book value of which was $18,250. The trial court valued the total overpayment on the cars at $25,400 and awarded that amount to Ahtna Government Services.

### 5. The billing of Pacific Native Development employees' time

Ahtna Government Services was billed for Pacific Native Development employees' time purportedly spent working on Ahtna Government Services projects. Pacific Native Development did not submit time sheets to Ahtna Government Services or provide details about these charges. Harris approved the charges to Ahtna Government Services for Pacific Native Development employees' time. Though he acknowledged that Pacific Native Development employees kept time sheets, and that he had likely saved the time sheets, Harris could not account for the whereabouts of these documents and did not produce them for trial. But Christopher Smith, a former Pacific Native Development employee and later the president of Ahtna Government Services, retained personal copies of his Pacific Native Development time sheets. A comparison of the hours Harris charged Ahtna Government Services for Smith's work with the hours recorded on the time sheets that Smith retained revealed an overcharge of 197 hours. The trial court inferred from this demonstrated overcharge and Harris's failure to produce time sheets that Harris inflated other employees' time as well. The trial court awarded Ahtna Government Services the $50,968.13 that it requested for these unsubstantiated charges.

### 6. The use of Ahtna Government Services funds and employees

Harris directed Ahtna Government Services employees to work on his personal boat and used Ahtna Government Services funds to pay his attorney's fees in personal litigation. The trial court awarded Ahtna Government Services $10,472.21 for these charges.

### 7. The leases

The day before his termination, Harris's wife obtained draft leases for equipment and furniture in Ahtna Government Services's Anchorage, Hawaii, and California offices, and Harris backdated invoices charging Ahtna Government Services $46,685 for the rentals. When an Ahtna Government Services employee refused to sign the backdated leases, Harris himself signed them on behalf of Ahtna Government Services and Harris's wife signed for Pacific Native Development. Notably, two of the leases were backdated to July 1999, which preceded Ahtna Government Services's organizational meeting. The trial court found that these leases overcharged Ahtna Government Services by $40,000 and awarded Ahtna Government Services that amount.

### B. 2001 Through December 2004

In early 2001 Ahtna, Inc. fired Darryl Jordan, the company president who had invited Harris to join in forming Ahtna Government Services. Ken Johns replaced Jordan as president of Ahtna, Inc. in April of that year. In March Neil Anderson, Ahtna, Inc.'s new chief financial officer, reviewed Ahtna, Inc.'s books and found accounting irregularities in many subsidiaries. In May 2001 Harris was fired.

On October 19, 2001, Ahtna Government Services filed suit against Harris for breach of fiduciary duty and for rescission of the stock purchase agreement. Harris answered in December and filed counterclaims and a third-party complaint against Ahtna, Inc. on thirteen counts: actual fraud, constructive fraud, conversion, wrongful termination in violation of public policy, defamation, defamation to business reputation, intentional and negligent infliction of emotional distress, breach of contract, intentional and negligent misrepresentation, breach of the covenant of good faith and fair dealing, and tortious interference. Harris amended his third-party complaint in February 2002 to add a number of defendants, including Ken Johns (president and CEO of Ahtna, Inc.), Laura Gould (vice-president and CFO of Ahtna Government Services), Paul Tony and Neal Anderson (Ahtna, Inc. board members), and John Does I–X.[3]

---

3. This amended third-party complaint included a count of specific performance regarding the put-and-call option provision of the Ahtna Government Services shareholders agreement; in this count, Harris declared that an impasse between shareholders had arisen. In a separate decision, the superior court required Harris to deliver his Ahtna Government Services shares to Ahtna, Inc. for a certain consideration under this put-and-call option provision. *Harris v. Ahtna, Inc.*, 107

On September 11, 2003, Ahtna Government Services filed a motion requesting that the court place the burden on Harris to prove that the transactions were reasonable under AS 10.06.478, the statute governing related party transactions. A few days later, Ahtna, Inc. joined that motion and also filed a motion for summary judgment on Harris's non-compliance with AS 10.06.478. Harris opposed these motions in early October.

On October 30 the trial court issued its order on burden of proof. It ruled that Harris was required to prove by a preponderance of the evidence that the transactions were fair, and that a majority of Ahtna Government Services's disinterested directors knew the material facts of the transactions and approved them. If he could not prove the former—the fairness of the transactions—the matter would be resolved against Harris. If he could not prove the latter, Harris was required to prove the fairness of the transactions by clear and convincing evidence. The trial court denied Ahtna, Inc.'s motion for summary judgment.

■ The case advanced to a bench trial. The proceedings lasted from November 3, 2003 to November 13, resumed on December 8, and concluded on December 12. On August 16, 2004, the trial court entered an oral decision into the record. It found against Harris on all claims and directed Ahtna Government Services to prepare findings of fact and conclusions of law for its review. Harris filed objections to Ahtna Government Services's proposals, but the trial court overruled Harris's objections and adopted all of Ahtna Government Services's proposed findings except certain findings concerning Jordan. The trial court denied Ahtna, Inc.'s motion for enhanced attorney's fees, award-

ing the company $39,072 as calculated under Alaska Civil Rule 82(b)(2), but it granted full reasonable attorney's fees to Johns, Tony, and Anderson due to the vexatious nature of Harris's claims against them. The final judgment against Harris in favor of Ahtna Government Services was $802,753.44; the judgment in favor of Ahtna, Inc. was $58,647.31; and the judgment in favor of Johns, Tony, and Anderson was $91,929.24. Harris appeals.[4]

### C. December 2004 to Present

In April 2005 Harris filed for bankruptcy. A notice of bankruptcy conversion was filed in this action on September 8 of that year, and this appeal was stayed on September 30, 2005. The stay was modified in January 2007 to allow this appeal to proceed.

## III. STANDARD OF REVIEW

■ We employ the clearly erroneous standard to review a lower court's factual findings.[5] Factual findings will be reversed only if we are left with a definite and firm conviction that a mistake has been made after considering the record as a whole.[6] A lower court's decision to admit or exclude evidence is reviewed for abuse of discretion and will be reversed only if the error affected the substantial rights of a party.[7] We review a lower court's allocation of the burden of proof de novo, adopting the rule of law that is most persuasive in light of precedent, reason, and policy.[8]

## IV. DISCUSSION

### A. Harris's Argument Regarding the Burden of Proof Fails.

■ The trial court determined that under AS 10.06.478, the statute governing related

---

P.3d 271, 273–74 (Alaska 2005). We later reversed that ruling. *Id.* at 279.

**4.** We do not review the trial court's dismissal of Harris's defamation and interference with business relationships claims against Johns, Tony, and Anderson. Though Harris included these claims in his points on appeal, he did not substantively brief them and they are therefore deemed waived. *State v. O'Neill Investigations, Inc.,* 609 P.2d 520, 528 (Alaska 1980) ("Failure to argue a point constitutes an abandonment of it.").

**5.** *Wyller v. Madsen,* 69 P.3d 482, 485 (Alaska 2003).

**6.** *Id.*

**7.** *Marron v. Stromstad,* 123 P.3d 992, 998 (Alaska 2005).

**8.** *Flynn v. E.I. du Pont de Nemours & Co.,* 988 P.2d 97, 98 (Alaska 1999).

party transactions, Harris was required to prove the transactions in question were proper, and it concluded that Harris failed to do so. Harris contends that the deals were part of a larger pre-incorporation agreement not subject to the requirements of AS 10.06.478, and that the trial court therefore improperly placed the burden on him to prove the transactions were fair rather than on his opponents to prove the transactions were unfair. But as the trial court recognized, "[t]he proper allocation of burden of proof on this issue is irrelevant" given its express finding that Ahtna Government Services "established the transactions were unfair by clear and convincing evidence." Thus, even assuming that Harris is correct and that the trial court should have placed the burden on Ahtna Government Services to affirmatively prove the transactions were unfair, Ahtna Government Services has already met this burden.

### B. The Trial Court's Factual Findings Regarding the Clear and Kulis Projects and the Rental of Office Space Were Not Clearly Erroneous.

Harris contends that the trial court's findings regarding the Clear and Kulis projects and the rental of Pacific Native Development office space to Ahtna Government Services were clearly erroneous and present no basis for liability or damages on his part. He further complains that the trial court adopted Ahtna Government Services's proposed findings of fact nearly verbatim and characterizes the court's findings as "stark pronouncements." Harris's arguments lack merit.

 The trial court did not err in requesting proposed findings of fact and conclusions of law from counsel. As Harris acknowledges, Alaska Civil Rule 78 specifically provides for this practice.[9] Nor did the trial court err in adopting those findings and conclusions. As we stated in *Industrial Indemnity Co. v. Wick*, "Rule 78(a) was not intended to delegate to counsel the court's duty of finding the facts. A trial court is, however, entitled to adopt findings and conclusions prepared by counsel, so long as they reflect the court's independent view of the weight of the evidence."[10] That the trial court considered the findings before adopting them is clear from its deletion of material related to Jordan in Ahtna Government Services's proposed findings.

Harris's suggestion that the trial court's findings were "stark pronouncements," lacking support, is also unavailing. The only case Harris cites in support of this proposition, *Mackie v. Chizmar*,[11] is inapposite. In *Mackie*, the plaintiff was misdiagnosed with HIV and sought $150,000 in damages from the doctor who had misdiagnosed her.[12] The trial court awarded her $15,000.[13] It provided no rationale for this decision, stating only the following: "The court concludes that the sum of $15,000 shall be awarded to Savitri Chizmar for compensatory damages."[14] Neither of the parties suggested this amount.[15] With no rationale to support the award, we remanded for further findings.[16] But here, the trial court made detailed findings about the Clear and Kulis projects and the rental of office space, and its rationale is apparent. Furthermore, it accepted Ahtna Government Services's proposed findings on these issues, which included a detailed recitation of the evidence relied on, complete with citations to the record. Harris's argument is without merit.

 Harris also argues that the trial court's findings regarding Pacific Native Development's rental of office space to Ahtna Government Services and regarding the Clear and Kulis projects were clearly erroneous. To support his argument, Harris cites to his own testimony, to Jordan's testimony, and to exhibits that Harris himself constructed. But the trial court explicitly found that

---

**9.** Alaska R. Civ. P. 78(a).

**10.** 680 P.2d 1100, 1108 (Alaska 1984) (internal citation omitted).

**11.** 965 P.2d 1202 (Alaska 1998).

**12.** *Id.* at 1207.

**13.** *Id.*

**14.** *Id.* (quotations omitted).

**15.** *Id.*

**16.** *Id.*

Harris and Jordan were not credible witnesses. And to the extent that Harris cites the testimony of other, credible witnesses, he presents at best an alternative view of the evidence. We reverse factual findings only if they are clearly erroneous, and "[c]lear error is not demonstrated by merely showing a conflict in the evidence."[17] Viewing the record as a whole, we are not left with a definite and firm conviction that the trial court erred in its findings regarding the rental of office space to Ahtna Government Services and the Clear and Kulis projects. These findings are not clearly erroneous.

### C. The Trial Court Did Not Err in Admitting Exhibit 79.

Harris argues that the trial court erred in admitting Exhibit 79, Christopher Smith's time sheets from his work at Pacific Native Development. Harris contends that these time sheets were inadmissible on grounds of unfair surprise and unfair prejudice because they were not produced before trial. The trial court noted that the time sheets were not from the records of Ahtna Government Services, the party from whom Harris had requested discovery, but rather from Smith's personal records, and it ruled that the time sheets were admissible.

Pacific Native Development, Harris's wholly owned company, charged Ahtna Government Services for Pacific Native Development employees' time ostensibly spent working on Ahtna Government Services projects. Harris then approved the bills in his capacity as president of Ahtna Government Services. Ahtna Government Services claimed that Harris breached his fiduciary duty to the company through self-dealing transactions that caused Ahtna Government Services to pay for non-existent and unsubstantiated expenses, unreasonably benefiting other entities controlled by Harris. Harris did not produce the Pacific Native Development time sheets for which he authorized payment by Ahtna Government Services because he claimed he did not know where they were.

At trial, Harris called Christopher Smith, a former Pacific Native Development employee and then-president of Ahtna Government Services, to testify about work he had done for Ahtna Government Services as a Pacific Native Development employee. When Harris deposed Smith five months earlier, he asked Smith the following question: "Item 7, AGSC payments to PNDC for services and costs, the amount of the loss claimed is $62,900. Do you know anything about that?" Smith replied that he had seen some of the accounting documents relating to it but did not have any "specific information on the details." Harris asked whether Laura Gould, Ahtna Government Services's chief financial officer, would be better able to answer questions on that topic, and Smith said yes.

Shortly before he testified, Smith found some old Pacific Native Development time sheets in his personal records and faxed them to Ahtna Government Services's counsel. Smith stated that he had not thought about looking for them before because they were Pacific Native Development records, and he assumed that Harris had them and would have produced them to Ahtna Government Services. Ahtna Government Services moved to enter the time sheets as Exhibit 79 during its cross-examination of Smith. Harris requested five minutes to review the documents, which was granted. He also examined Smith on voir dire about them. Harris then objected to the documents, claiming they should have been produced before trial under Alaska Civil Rule 26 and were inadmissible for unfair surprise. The trial court noted the documents came from Smith's personal records, not from Ahtna Government Services's records, and admitted the exhibit.

On appeal, Harris argues that the time sheets should have been excluded on grounds of unfair prejudice and unfair surprise because they were not produced before trial and because he did not have an opportunity to independently test their veracity. Alaska Rule of Evidence 403 provides that relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Here, the probative

---

**17.** *Preferred Gen. Agency of Alaska, Inc. v. Raffet-* *to,* 391 P.2d 951, 953 (Alaska 1964).

value of the time sheets is high because they go to the heart of Ahtna Government Services's breach of fiduciary duty claim. But Harris contends that Smith's statement claiming he had no specific information on the details of the unsubstantiated billing issue, which he made during his deposition, was "wholly inconsistent" with his trial testimony regarding the time sheets, and Harris argues that this unfairly prejudiced him.

Harris's argument is unpersuasive because Smith was unaware at the time of his deposition that he had time sheets that could be important to the case. Although Harris emphasizes that he did not have the opportunity to independently test the veracity of the time sheets, at trial he requested only the opportunity to examine Smith on voir dire and five minutes to examine the documents before they were admitted, and both of these requests were granted. Harris did not request a continuance of any greater duration.

Harris suggests that he was unfairly surprised by the time sheets because they were not produced before trial. But Harris cannot fault Smith for a failure to produce; Smith was not a party to the case and was therefore not obligated to produce documents under Alaska Civil Rule 26. To the extent Harris is arguing that Ahtna Government Services improperly failed to produce the documents before trial, that argument is unpersuasive because Ahtna Government Services did not receive them until the night before they were introduced. Moreover, the time sheets were Pacific Native Development documents that had been in Harris's possession; according to his testimony, he had misplaced them.[18]

Our decision in *Marron v. Stromstad*[19] is instructive on Harris's unfair surprise argument. In *Marron,* the plaintiff claimed that she was injured in a car accident.[20] Her treating physician, Dr. White, examined her but refused to operate on her.[21] She then saw another doctor who performed a discogram and suggested surgery, which was later done.[22] At trial, Marron filed a motion in limine to strike Dr. White's expert deposition testimony, but the trial court denied her motion.[23] After the jury found that Stromstad's actions were not the legal cause of Marron's injury,[24] Marron appealed the admission of Dr. White's testimony, claiming that Stromstad had not provided an expert witness report and that she was unfairly surprised by the testimony.[25] But because it was foreseeable that Stromstad would explore this issue with Dr. White, because Marron knew exactly what techniques Dr. White did and did not use, and because excluding the testimony would have presented an inaccurate picture of what happened, we concluded that Marron was not unfairly surprised and affirmed admission of the evidence.[26]

Each of these factors is present here as well. Harris was aware of Ahtna Government Services's claim about fraudulent charges benefiting other entities in which he had an interest, so it was foreseeable that Ahtna Government Services would explore this issue. Harris approved the charges to Ahtna Government Services for Pacific Native Development employees' time, and in fact Smith's time sheets were copies of documents Harris had actually held in his possession, so he understood what was in them. And excluding the time sheets would have presented an inaccurate picture of what happened.

Finally, the trial court granted Harris's request for a brief period to examine the documents and voir dire the witness about them. Harris made no other request for additional time to examine the documents or for a continuance of the trial. The trial court did not abuse its discretion in admitting Exhibit 79.

---

18. The trial court found that Harris was not a credible witness.

19. 123 P.3d 992 (Alaska 2005).

20. *Id.* at 996–97.

21. *Id.* at 996, 1000.

22. *Id.* at 996.

23. *Id.* at 997.

24. *Id.*

25. *Id.* at 1000.

26. *Id.* at 1000–01.

## V. CONCLUSION

We AFFIRM the trial court's decision in all respects.